)
**In re:** )
) **Chapter 11**
**CLEAN HARBORS PLAQUEMINE, LLC,** ) <u>Case No. 06-13728</u>
)
**Debtor.** )
)

## MOTION FOR ORDER (I) DISMISSING CASE PURSUANT TO 11 U.S.C. 1112; OR, IN THE ALTERNATIVE, (II) DISMISSING OR SUSPENDING CASE PURSUANT TO 11 U.S.C. 305(a); OR, IN THE ALTERNATIVE, (III) GRANTING RELIEF FROM THE AUTOMATIC STAY

Terry Giauque ("Giauque"), Melissa Bertrand ("Bertrand"), Darla Larson ("Larson"), Walter Allen ("Allen"), Kim Fowler ("Fowler"), and Claude Duncan ("Duncan") (collectively "Movers"), hereby move the Court for an order (1) dismissing the above captioned case pursuant to 11 U.S.C. §1112, or, alternatively, (2) declining to exercise jusrisdiction over this case and dismissing or suspending this case under §305(a) of the Bankruptcy Code, or, alternatively, (3) granting relief from the automatic stay pursuant to §362 of the Bankruptcy Code. The grounds for this motion are set forth more fully in the Memorandum of Law in support of the Motion filed contemporaneously herewith.

Respectfully Submitted,

Hanify & King, P.C.
One Beacon Street, 21st Floor
Boston, MA 02108
Phone: 617-423-0400
Fax: 617-556-8985

By: /s/ D. Ethan Jeffery
Harold B. Murphy (BBO # 362610)
D. Ethan Jeffery (BBO # 631941)

-and-

**STEFFES, VINGIELLO, & MCKENZIE, LLC**
13702 Coursey Boulevard, Building 3
Baton Rouge, LA 70817
Telephone: (225) 751-1751
Telecopier: (225) 751-1998
William E. Steffes (La.#12426)
Arthur A. Vingiello (La. #13098)
Patrick S. Garrity (La. #23744)

Dated: October 27, 2006

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
### (Eastern Division)

OCT 30 '06 AM10:44 USB

|  |  |
|---|---|
| In re: | Chapter 11 |
| CLEAN HARBORS PLAQUEMINE, LLC, | Case No. 06-13728 |
| Debtor. | |

## MEMORANDUM IN SUPPORT OF MOTION FOR ORDER (I) DISMISSING CASE PURSUANT TO 11 U.S.C. 1112; OR, IN THE ALTERNATIVE, (II) DISMISSING OR SUSPENDING CASE PURSUANT TO 11 U.S.C. 305(a); OR, IN THE ALTERNATIVE, (III) GRANTING RELIEF FROM THE AUTOMATIC STAY

Terry Giauque ("Giauque"), Melissa Bertrand ("Bertrand"), Darla Larson ("Larson"), Walter Allen ("Allen"), Kim Fowler ("Fowler"), and Claude Duncan ("Duncan") (collectively "Movers"), hereby submit this Memorandum in support of their Alternative Motion For Order Dismissing Case, Abstaining or Suspending Case, or Granting Relief From the Stay ("the Motion").

## I.    PRELIMINARY STATEMENT AND SUMMARY OF RELIEF SOUGHT

No legitimate purpose is served by the continuation of this Chapter 11 case for this wholly owned subsidiary under the complete corporate control of a solvent publicly traded parent company. The filing of this case frustrates and impedes the remediation of the Debtor's sole asset, a closed hazardous waste site in the state of Louisiana, which site has been found to present an ongoing threat to the health, safety and well-being of the citizens of Louisiana and its environment. This Debtor has no meaningful assets, no employees, conducts no business, and has

minimal direct debt, the bulk of which is owed to Louisiana creditors.[1] Dismissal of this case is mandated because "cause" exists, because the Debtor filed its petition in bad faith, no legitimate purpose will be served by affording the Debtor protection from non-compliance with state law and the Debtor's affairs are manifestly incapable of reorganization. This filing has stopped a court-ordered clean up of chemical contamination which currently presents an imminent and substantial endangerment to human health and the environment. *In Re Charles George Land Reclamation Trust*, 30 B.R. 918 (Bankr. D. MA. 1983). Alternatively, relief from the stay should be granted so the environmental clean up and related issues on the site pictured on Exhibit "B" can be resolved efficiently in state court.

On October 17, 2006, on the eve of a contempt hearing scheduled the next morning in a long-pending and hotly contested Louisiana state court case, Clean Harbors Plaquemine, LLC ("CHP" or "Debtor"), a self-described "insignificant subsidiary" of Clean Harbors, Inc. ("CHI")[2], filed this Chapter 11 case. Even a cursory review of the multitude of pending state and federal court proceedings involving serious and unremediated environmental problems at CHP's sole facility in Plaquemine, Louisiana and the initial pleadings filed by CHP in this case will leave the Court with the firm conviction that CHP commenced this case solely to avoid ongoing litigation with respect to ongoing violations of environmental laws and, indeed, has no business and no assets of value that can be reorganized or even liquidated.[3] The commencement of this case

---

[1] The Debtor is believed to be a guarantor of debt of its parent company. However, the recently filed list of Twenty Largest Unsecured Creditors lists very little trade debt owed directly by this debtor. See Exhibit "A."

[2] See Exhibit "C".

[3] See Voluntary Petition and Exhibits thereto attached as Exhibit "D". CHP estimates its assets at between $100,001 to $500,000 and its liabilities at "more than $100,000,000. See also Exhibit "C" which states that "...the decision has been made to close the [CHP] deep injection well facility located near Plaquemine, Louisiana, effective immediately." It should also be noted that the decision to commence this bankruptcy was apparently made at a meeting held on October 6, 2006, a date when CHP, CHI, and their counsel claimed to have been negotiating in good faith to achieve a settlement with counsel for Movers. See Secretary's Certificate attached as Exhibit "E".

serves no "valid bankruptcy purpose" and functions "merely to obtain a tactical litigation advantage" in pending non-bankruptcy litigation in which the Movers are plaintiffs. See *In re Integrated Telecom Express. Inc.*, 384 F.3d 108, 120 (3d Cir. 2004) (citing *SGL Carbon Corp.*, 200 F.3d 154, 165 (3d Cir. 1999).

Furthermore, it is patently obvious that the sole issue facing CHP (and its parent, CHI, as well as other defendants) is the remediation of its injection well site and the surrounding land and water in Louisiana, issues that have been under consideration and addressed by the Louisiana courts for years and are most properly dealt with by courts in the area that are familiar with Louisiana's environmental laws.[4]   Accordingly, for these reasons and others as more fully explained below, this case should be dismissed or, alternatively, this Court should abstain from hearing and indefinitely suspend proceedings pending the outcome of the Louisiana litigation. Alternatively, Movers should be granted relief from the automatic stay to the extent necessary to pursue all remedies available in the Louisiana litigation.[5]

## II.   JURISDICTION AND VENUE

---

[4] The primary liabilities of CHP arise from violations of the provisions of the Louisiana Environmental Quality Act ("LEQA"), LSA-R.S. 30:2026, among other things, including 1) the illegal disposal of hazardous waste; and 2) the failure to report and take prompt remedial action in response to unauthorized discharges and releases of hazardous constituents to ground water.

[5] Although Movers are not currently seeking a change of venue of this case as they believe the case should be dismissed, stayed, or relief from the stay should be granted, the filing if this case in Boston is yet another indication that CHP, a Delaware limited liability company, (and its parent, CHI) are abusing the bankruptcy system. Many of the issues involved in this case arise out of the purchase of the Plaquemine injection well site and other hazardous waste sites by CHI from a Chapter 11 Debtor, Safety-Kleen, Inc. that was commenced before Judge Peter Walsh in the Delaware bankruptcy court on June 9, 2000. *In re: Safety-Kleen Corp, et al*, Case #00-2303, United States Bankruptcy Court, District of Delaware ("Safety-Kleen Sale"). Judge Walsh presided over that case through the sale to CHI on February 22, 2002 and, indeed, is currently presiding over an adversary proceeding brought by CHI putting at issue its liability for environmental cleanup under the sale agreement and Judge Walsh's Order approving the sale. *Clean Harbors Environmental Services, Inc. v. Arkema Inc. et al.*, Adv. No. 05-50474. Therefore, venue in either Delaware before a court thoroughly familiar with the acquisition of assets and liabilities by CHI or in Louisiana, the state with the most vital interests in the outcome of the case, rather than this district would be both proper and far more appropriate. By filing in Boston, CHP has attempted to distance itself from the judges most familiar with the issues involved and the forum whose citizens are most in jeopardy as a result of its unlawful activities.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The subject matter of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) & (0). The statutory predicates for the relief requested herein are 11 U.S.C. §§ 105(a), 305(a)(1), 362(d)(1), 1104(a), 1104(c), 1112(b), and 28 U.S.C. §1408.

## III. FACTUAL BACKGROUND

Movers' thesis is that this filing is a sham whose sole purpose is to delay and/or completely avoid environmental remediation responsibilities by CHI of one of its subsidiary hazardous waste sites. A brief synopsis of the litigation follows.

### A. CLEAN HARBORS PLAQUEMINE BANKRUPTCY

In August 2002, CHI purchased the assets of Safety-Kleen's Chemical Services Division pursuant to an order entered in the Safety-Kleen's Delaware Chapter 11 case. Included with those assets was Louisiana's sole commercial hazardous waste injection well located at 32655 Gracie Lane in Bayou Sorrel, Louisiana. CHP was organized as a wholly owned single asset subsidiary of CHI that acquired title to the Bayou Sorrel property. CHP filed this Chapter 11 case on October 17, 2006, just after receiving certain adverse rulings from the Louisiana Supreme Court, on the eve of a state court contempt hearing and just a few days prior to a scheduled hearing on a preliminary injunction.

### B. LOUISIANA LITIGATION

The Movers are plaintiffs in multiple suits against CHP and CHI (collectively "Louisiana Litigation"):

1. *Terry Giauque, Melissa Bertrand, and Darla Larson, individually and on behalf of the minor child, Allie Larson versus Clean Harbors Plaquemine, LLC and Michael A. Sullivan,* docket number 60,195, Division "A" in the 18th Judicial District Court for

Iberville Parish, Louisiana. ("*Giauque I*").

a.      Procedural History

This action was brought in the 18th Judicial District Court for the Parish of Iberville, Louisiana on November 7, 2003. Giauque, Bertrand, and Larson filed suit against CHP and individual defendant Michael A. Sullivan ("Sullivan"), a Louisiana citizen, for violations of Louisiana environmental law and regulations at the CHP injection well and neighboring polluted property in Bayou Sorrel, Louisiana, including a 1.5 mile stretch of sensitive and fragile wetlands where chemical waste was released from a hazardous waste pipeline. The Movers have expended hundreds of thousands of dollars on environmental sampling and analyses, experts, and related clean up reports.

On or about December 17, 2003, the case was removed to the United States District Court for the Middle District of Louisiana by CHP and Sullivan but was later remanded back to state court after the Magistrate found some of CHP's argument to be "patently absurd."

The suit was brought pursuant to the citizen suit provisions of the LEQA, LSA-R.S. 30:2001, *et seq.*, in response to CHP and Sullivan's ongoing violations of the LEQA including 1) the illegal disposal of hazardous waste; 2) the failure to report and take prompt remedial action in response to unauthorized discharges and releases of hazardous chemicals to ground waters from five underground waste pits concealed in the swamps and fragile wetlands of Bayou Sorrel; and, 3) the intentional withholding of crucial data and information evidencing the existence and severity of chemical contamination of soils and ground water at the injection well facility and its surrounding environment.

b.      Injunctions Are Pending Against CHP and Sullivan

i.      The Temporary Restraining Order

On May 4, 2004, Giauque, Bertrand, and Larson filed a Petition for Preliminary Injunction and Temporary Restraining Order (hereinafter "TRO") as CHP and Sullivan were in violation of LSA-R.S. 30:2203, which prohibits discharges and releases of pollutants. The trial court issued the TRO on the same day, enjoining defendants from violating LSA-R.S. 30:2203 by allowing unauthorized discharges, releases and migration of pollutants and hazardous waste.

After conducting hearings on violations of the TRO by CHP and Sullivan, the trial court issued its Ruling[6] and found, among other things, chemical contamination of soil and groundwater in areas accessible to humans and wildlife that poses a serious threat to life and property. Those violations are substantial and ongoing today.

The court also found CHP and Sullivan were in total disregard of that Restraining Order as though the Order had never existed.[7] Finally, the court also found that CHP and Sullivan had violated LSA-R.S. 30:2203 by failing to take prompt remedial action.[8] The court also granted a preliminary injunction against CHP and Sullivan and ordered that Clean Up Plans be submitted by the parties for the court's review and determination of the appropriate course of action.[9]

The parties submitted Clean Up Plans to the court on July 10, 2006. Giauque, Bertrand, and Larson moved the court to adopt their Clean Up Plan. A motion was also filed to assess penalties against CHP for its violations of the trial court's TRO. A hearing was scheduled on these motions for August 18, 2006, but that hearing date was continued as the parties engaged in mediation efforts.

The mediation was unsuccessful. Giauque, Bertrand, and Larson's motions were rescheduled to be heard by the court on October 4, 2006. At the request of CHP, the parties

---

[6] See Exhibit "F", *Ruling* June 9, 2006, p.1, ¶¶2, 3
[7] See Exhibit "F", p.1, last paragraph. Emphasis added.
[8] See Exhibit "F", p.2, first paragraph.

continued the October hearing date and further discussed resolution of this matter. Although the parties agreed to a sum certain to settle the actions, CHP refused to agree to remove the pollution source, a refusal that made it impossible for Movers to accept the settlement offer. After a resolution could not be reached, the hearing on the motions to have the trial court adopt a clean up plan pursuant to its TRO and injunction, and to impose penalties for CHP's violation of the LEQA and its assault on the court's dignity through its flagrant disregard of the court's TRO were rescheduled for October 23, 2006. CHP filed its bankruptcy petition just six days before the hearing. Even more telling, CHP apparently decided it would file on October 6th, during a time when it claimed to have been negotiating in good faith with Movers. CHP's violation of Louisiana law and the trial court's injunctions continue with regard to the illegal discharges and releases from the five pits as no corrective action has been taken by CHP and, indeed, none is planned.

  ii.  The Preliminary Injunction Restraining the Illegal Disposal Activities

  Giauque, Bertrand, and Larson also obtained injunctive relief from the trial court prohibiting continued violations of Louisiana law, specifically LSA-R.S. 30:2202(C) which prohibits the disposal of hazardous waste into a Class I underground injection well that is located within the banks or boundaries of a body of surface water within the jurisdiction of the state of Louisiana.[10]

  CHP and Sullivan appealed the preliminary injunction to the Louisiana First Circuit Court of Appeal as a matter of right. The trial court stayed the preliminary injunction during the pendency of the appellate process. On June 9, 2006, the appellate court reversed the lower court's injunction on a *res nova* issue, but held that the trial court had jurisdiction over these

---

[9] See Exhibit "F", p.2.

environmental enforcement matters. Giauque, Bertrand, and Larson have submitted a writ application to the Louisiana Supreme Court in response to the appellate court's decision, which is presently pending. Based on recent favorable Louisiana Supreme Court rulings in this case, it is reasonable to believe that the Court is contemplating reinstating the trial court's injunction prohibiting the injection of hazardous waste in protected wetlands.

c.    Contempt Proceedings

Through intensive discovery practice, the Plaintiffs have sought the production of documents and records from CHP, Sullivan and non-parties that contain evidence of the defendants' violations. Many such documents and records have been withheld from production for as long as two years while CHP asserted numerous objections of privilege and confidentiality.

A Special Master was employed to review the voluminous documents, as well as the extensive legal briefs and other writings submitted by the parties on the issues of privilege and confidentiality. Upon completion of more than 200 hours of time and effort, the Special Master submitted his Reports and Recommendations which granted the plaintiffs access to 70 groups of documents that had been wrongfully withheld by CHP and its environmental consultants. The trial court adopted the Special Master's findings as its own and compelled the production of the documents.

CHP responded by filing two writ applications on the privilege and confidentiality rulings with the Louisiana First Circuit Court of Appeal, which were denied. CHP next filed two writ applications with the Louisiana Supreme Court, which were denied on Friday, October 13, 2006, or just four days before CHP filed for bankruptcy.

When CHP refused to produce the improperly withheld documents, the plaintiffs filed a

---

[10]    See Exhibits "G" and "H", Ruling of Court and Judgment, respectively.

motion with the trial court seeking a necessary rule for contempt. That motion was filed with the trial court at approximately 12:00 o'clock pm on October 17, 2006. The trial court scheduled the contempt proceeding for 9:00 o'clock the next morning, October 18, 2006. That hearing was stayed due to the CHP filing on October 17, 2006.

d.     Delay Is CHP's Litigation Strategy

CHP has sought nine supervisory writs from the Louisiana appellate and supreme courts. Every one has been denied, except for one that is stayed by this filing. Those writ applications involve virtually every order issued by the trial court from preliminary exceptions to discovery and procedural motions to basic jurisdictional issues.

e.     The Responsible Parties

Through their own efforts, the Movers have identified no less than five separate financially solvent entities that are responsible for the chemicals and waste buried in the five pits at issue in this suit, as well as other contamination along CHP's hazardous waste pipeline. The identities of these responsible parties were long ago provided to CHP who, as a matter of law, can force these entities to pay clean up costs. Among the responsible parties identified are ExxonMobil Corporation, Waste Management, Inc., Lyondell Chemical Corporation and Syngenta Crop Protection, Inc. CHP has advised Movers that it would <u>not</u> seek financial contribution from these responsible parties, but instead filed the instant action. It should also be noted that many if not all of these entities are believed to be *major customers of CHI* and its other subsidiaries in the hazardous waste disposal business.

2.     *Walter Allen v. Black Stallion, Inc., Clean Harbors Plaquemine, LLC, Clean Harbors, Inc. And Clean Harbors Environmental Services, Inc.*, docket number 64,200, Division "A" in the 18th Judicial District Court for Iberville Parish, Louisiana

This suit is for a Preliminary and Permanent Injunction to have the court restrain Black

Stallion, Inc., a Louisiana trucking company, ("BSI"), CHP, CHI, and Clean Harbors

Environmental Services, Inc. ("CHEIS") from violating and/or knowingly causing the violation of

Louisiana law, LSA-R.S. 32:1, *et seq.*, the Louisiana Highway Regulatory Act, including LSA-

R.S. 32:54 which prohibits the Defendants from driving hazardous waste trucks over a small

pontoon bridge when the trucks exceed the posted weight limits for the bridge.    The pontoon

bridge crosses an intercoastal waterway which leads to a source of community drinking water.  On October 2:

3.    *United States of America, ex rel., Claude I. Duncan versus Safety-Kleen (Plaquemine),
Inc., Clean Harbors (Plaquemine), L.L.C., Clean Harbors, Inc., Syngenta Crop
Protection, Inc., Exxon Mobil Corporation, Lyondell Chemical Corporation, and Velsicol
Chemical Corporation,* docket number 04-0436 in the United States District Court for the
Middle District of Louisiana.

Claude I. Duncan ("Relator"), brought this action on behalf of himself and the United

States of America, its departments and agencies, including the Environmental Protection Agency

("EPA") and the General Services Administration ("GSA") against CHP and others for alleged

violations of the Federal False Claims Act, 31 U.S.C §§ 3729 *et seq.* ("FCA")[11]

---

[11] Relator was employed by various companies which owned the injection well facilities located on the property at
issue. Relator worked at the injection well facilities when the five surface impoundments were constructed. These
impoundments were constructed by digging pits into the ground 20 feet wide and 50 to 60 feet long and were
initially lined with plastic visqueen. The hazardous waste placed within these pits quickly dissolved the plastic
visqueen and, thus, the pits were left unlined. Thereafter, the hazardous materials placed within these pits would
go straight into the ground. Relator personally witnessed this while employed at the injection and well facility.

Rollins Environmental Services, Inc. ("Rollins"), a former owner of the injection well facilities, employed
Relator and Michael A. Sullivan. Its employees, including Sullivan, backfilled these pits, as well as pits at the
barge terminal for the facility.

The suit alleges Safety-Kleen, the entity from whom CHI purchased the injection well facility, knowingly
made false statements to the Louisiana Department of Environmental Quality ("LDEQ") and EPA regarding the
presence of the five toxic waste pits located at the injection well facility. This letter was also copied to the EPA.
The suit also alleges Safety-Kleen made additional similar false statements about these impoundments in other
documents submitted to the LDEQ and EPA including Amended RCRA Investigation/Feasibility Studies Reports
and Quarterly Ground Watering Monitoring Reports.

CHP continued to knowingly withhold the abovementioned information from LDEQ and EPA, as it was
aware of the five surface impoundments constructed at the injection well facility located in Bayou Sorrel. Just as
Safety-Kleen did, Clean Harbors made false statements about its lack of knowledge regarding these impoundments
located at the injection well facility located in Bayou Sorrel in documents it submitted to the LDEQ and EPA
including Amended RI/FS Reports and Quarterly Ground Watering Monitoring Reports in 2002, 2003, and 2004.

CHP also continues to knowingly withhold information about a drainage ditch Solid Waste Management
Unit ("SWMU"), as it is in possession of aerial photographs that indicate the presence of the SWMU. CHP, under

A hearing on several motions to dismiss is scheduled to take place in January 2007.

4.  *Walter Allen and Kim Fowler v. Rollins Environmental Services, Inc., Michael A. Sullivan, John C. Arbuthnot Clean Harbors (Plaquemine), L.L.C., Clean Harbors, Inc. ("CHI"), Clean Harbors Environmental Services, Inc. ("CHESI"), Cyril Hinds, Gerald I. Hebert, Steadfast Insurance Company,* Docket No.: 47,254, Division "A", 18th Judicial District Court, Parish of Iberville, State of Louisiana

This action was originally brought on April 4, 1996 in the 18th Judicial District Court for the Parish of Iberville, State of Louisiana seeking property damages for underground migration of hazardous waste from CHP's injection well onto land of neighboring landowners.

After suit was pending for over 10 years, on August 30, 2006, Defendant, Steadfast Insurance Company delayed the scheduled class certification hearing by removing this matter to the United States District Court for the Middle District of Louisiana. CHP's insurer based the removal upon the provisions of the Class Action Fairness Act by wrongfully arguing confidential mediation documents constituted "other paper" pursuant to 28 U.S.C. § 1446(b). A motion to remand is pending before the court.

## IV.    LAW AND ARGUMENT

### A.    DISMISSAL OR CONVERSION OF THE CASE

Immediate dismissal of this case is warranted to protect the citizens living near the Bayou

---

its HSWA permit, is also under a continuing obligation to the EPA and LDEQ to identify all solid waste management units that previously existed at the injection well facility. The drainage ditch is a former SWMU, but this fact has never been disclosed by CHP of CHI's environmental counsel, a former employee of the Louisiana state environmental regulatory agency.

Additionally, CHP, CHESI and CHI made false and misleading statements to the LDEQ and EPA by withholding data from test results from the LDEQ and EPA, confirming the existence of hazardous and toxic insecticide waste buried in the five pits located at the facility.

CHP handles and disposes of hazardous waste at the facility at issue, including Comprehensive Environmental Response Conservation Recovery Act ("CERCLA") wastes from its other facilities and from the remediation of Superfund sites. Throughout the time periods in which CHP committed the above described acts, it received and invoiced for the disposal of Superfund site wastes by submitting false claims certifying that it had complied with all local, state and federal ordinances, regulations, laws and orders. These false claims are evidenced through invoices submitted to contractors or subcontractors who received federal CERCLA funds and who arranged for the disposal of Superfund site waste at the injection well facility owned and operated by CHP in Bayou Sorrel.

Sorrell site from serious environmental and health hazards. A Louisiana trial court has already found, among other things, chemical contamination of soil and groundwater in areas accessible to humans and wildlife that poses a serious threat to life and property and has required a Clean Up Plan.

In the case of *In Re Charles George Land Reclamation Trust*, supra, the Debtor owned and operated a 63 acre waste disposal facility located in Tyngsboro, Massachusetts, which accepted and disposed of hazardous waste. The Environmental Protection Agency had designated the Debtor's site as one of the worst hazardous waste sites in the country and had established it as a top priority for cleanup. A Massachusetts superior court entered an order on February 4, 1983, compelling the Debtor to make payments into a special trust account for payment of a groundwater hydrology study and for security and payment of the final costs of closure of the site. The Debtor defaulted on these payments and, on April 29, 1983, the Debtor filed for protection under Chapter 11. On June 7, 1983, the Debtor consented to conversion of the Chapter 11 case to one under Chapter 7. The United States Trustee and certain creditors initially sought dismissal of the Chapter 11 case, and continued to seek dismissal after conversion to Chapter 7. The late Chief Judge of this Court, Thomas W. Lawless, ultimately dismissed the Debtor's Chapter 7, reasoning:

> It was this Court's sense of responsibility--to the two largest creditors of this estate and to the interests of the public at large--that compelled the dismissal of this case. This was not a bankruptcy case where assets could be liquidated, claims adjudicated and a distribution made within a relatively short period of time, but rather it was and is an ongoing environmental nuisance that threatens the health, safety and well-being of the people who surround it. The dismissal of this case was a recognition by this Court that the appropriate forum to redress and correct this environmental nuisance in the most expeditious and efficient manner was the State court. This Court had neither the resources, the expertise or, for that matter, a suitably qualified trustee with experience in hazardous waste management, to do other than to allow the resolution of this matter by the

continuing efforts of the appropriate state court. *In Re Charles George Land Reclamation Trust*, 30 B.R. 918, 924 (Bankr. D. MA. 1983)

Chief Judge Lawless explained that one of the primary difficulties in the conversion of the case was the unwillingness of any trustee to serve and the potential liability of the U.S. Trustee if required to serve pursuant to 11 U.S.C. §15701(b). That statute reads as follows: "If none of such persons [members of the panel of private trustees] is willing to serve as interim trustee in the case, then the United States trustee shall serve as interim trustee in the case." An identical outcome is almost certain in this case.

There the Court stated:

> ....it was impossible for any trustee to manage the Debtor's site in compliance with state law and thus meet the requirements of 28 U.S.C § 959(b). The ongoing violation of state law and the serious and immediate danger posed to the citizenry in the surrounding area by these violations, mandated that the Federal and State environmental agencies be given full and complete control of the hazardous waste site as soon as possible. In all likelihood, the Chapter 7 trustee's response to this untenable situation (assuming that the Court ordered the U.S. Trustee to so assume that function) would be to file a "Notice of Intention to Abandon" the site as burdensome and of inconsequential value to the estate. *Charles George* at p. 923.

The Court held that the "cause" for dismissal listed in § 707 was not exclusive and that the case should be dismissed because "it was not capable of administration as a bankruptcy case." *Charles George* at p. 924 This Honorable Court has abundant cause under § 1112 (b) to dismiss this case and it is respectfully requested to do so immediately.

The case at hand is quite similar to *Charles George* in that, by commencing this Chapter 11 case, the Debtor has effectively requested that this Court preside over the implementation and supervision of an environmental clean up plan. One major difference is that here the land is located over 1200 miles away. As in *Charles George,* neither CHP, as the debtor in possession nor any subsequently appointed trustee can possibly comply with the mandates of 28 U.S.C.

§959(b) with respect to the Bayou Sorrell hazardous waste site. While this Court is suited to handle a vast array of matters, bankruptcy courts were not designed to preside over environmental clean up matters under Louisiana's court system. If anything, the facts in this case justifying dismissal are even more compelling than those in *Charles George*.

Section 1112(b)(4) of the Bankruptcy Code ("the Code") requires dismissal for cause if such dismissal is in the best interests of the creditors and the estate. The types of activities and/or deficiencies that constitute "cause" are enumerated in subsections (b)(4)(A) through (P) of §1112. The first cause listed is when there is "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." §1112(b)(4)(A). Such is clearly the case here where the Debtor has voluntarily closed its facility, faces millions of dollars of liability in remediation costs and damages, and describes itself as an "insignificant subsidiary" of a solvent publicly traded corporate parent. The remaining causes set forth in §1112(b)(4)(B)-(P) are not applicable at this time, as they pertain to events that would occur later in the case or after confirmation of a plan.

Many of the factors establishing "cause" to dismiss are similar to those used to determine the propriety of abstention or of lifting the stay, and are addressed in the argument relating to those requests that follows.

Although many courts have held that a lack of good faith by the debtor in filing the petition is grounds for dismissal, that position was rejected in this district in *Victory Limited Partnership*, 187 B.R. 54 (Bankr.D.Mass.). However, it is respectfully suggested that application of the good faith doctrine in Chapter 11 cases should be reconsidered in light of a recent decision by Court of Appeal for the First Circuit, *In re Marrama*, 430 F.3d 474 (1st Cir. 2005), cert. granted 126 S. Ct. 2859, 165 L.Ed 2d 894 (2006). In that case, the First Circuit affirmed a

decision by this Court, upheld by the United States District Court on appeal, applying a good faith requirement to a debtor's motion to convert a case from Chapter 7 to Chapter 13. The consideration of bad faith in the context of conversion of a Debtor's case from Chapter 7 to Chapter 13 but not in the context of a Chapter 11 filing appears to create contrasting standards not contemplated by the Bankruptcy Code. It is respectfully submitted that there is no valid reason not to apply the good faith standard in the Chapter 11 context as well.

Numerous courts have found good faith to be a requisite in maintaining a case under Chapter 11. Among those cases are: Connell v. Coastal Cable T.V., Inc. (In re Coastal Cable T.V., Inc.), 709 F.2d 762, 764 (1st Cir.1983); *In re Thirtieth Place*, 30 B.R. 503 at 505-06; *In re American Property Corp.*, 44 B.R. 180 at 183 (Bankr. M.D.Fla.1984); *In re Corp. Deja Vu*, 34 B.R. 845 at 848-50; *Duggan v. Highland-First Ave. Corp.*, 25 B.R. 955 at 961-62 (Bankr.C.D.Cal.1982); *In re Zed, Inc.*, 20 B.R. 462 at 463-64 (Bankr N.D.Cal.1982); *In re FJD, Inc.*, 24 B.R. 138 at 140-41 (Bankr.D.Nev.1982); *Matter of 299 Jack-Hemp Associates*, 20 B.R. 412 at 413; *In re Alison Corp.*, 9 B.R. 827 at 829-30 (Bankr.S.D.Cal.1981); *In re Victory Constr.*, 9 B.R. 549 at 565, 568; In re *Lotus Investments, Inc.*, 16 B.R. 592 at 594-95; *In re Eden Assoc.*, 13 B.R. 578 at 584-85 (Bankr.S.D.N.Y.1981); *In re Dutch Flat Inv. Co.*, 6 B.R. 470 at 471-72 (Bankr.N.D.Cal.1980); *In re 2218 Bluebird Ltd. Partnership*, 41 B.R. 540 at 542-44 (Bankr.S.D.Cal.1984).

According to the Fifth Circuit Court of Appeal:

> Every bankruptcy statute since 1898 has incorporated literally, or by judicial interpretation, a standard of good faith for the commencement, prosecution, and confirmation of bankruptcy proceedings. See *In re Victory Constr. Co.*, 9 B.R. 549, 551-60 (Bankr.C.D.Cal.1981) (containing an excellent historical survey). See, e.g., *Fidelity Assur. Assoc. v. Sims*, 318 U.S. 608, 621, 63 S.Ct. 807, 813-14, 87 L.Ed. 1032 (1943); *A-COS Leasing Corp. v. Wheless*, 422 F.2d 522, 523-25 & n. 1 (5th Cir.1970). Such a standard furthers the balancing

process between the interests of debtors and creditors which characterizes so many provisions of the bankruptcy laws and is necessary to legitimize the delay and costs imposed upon parties to a bankruptcy. Requirement of good faith prevents abuse of the bankruptcy process by debtors whose overriding motive is to delay creditors without benefiting them in any way or to achieve reprehensible purposes. Moreover, a good faith standard protects the jurisdictional integrity of the bankruptcy courts by rendering their powerful equitable weapons (i.e., avoidance of liens, discharge of debts, marshalling and turnover of assets) available only to those debtors and creditors with "clean hands." The Supreme Court aptly summarized the bankruptcy court's responsibility to enforce a standard of good faith when it stated: "A court of equity may in its discretion in the exercise of the jurisdiction committed to it grant or deny relief upon performance of a condition which will safeguard the public interest.... These principles are a part of the control which the court has over the whole process of formulation and approval of plans of composition or reorganization." *American United Mut. Life Ins. Co. v. City of Avon Park,* 311 U.S. 138, 145, 61 S.Ct. 157, 161-62, 85 L.Ed. 91 (1940) (quoting *SEC v. United States Realty & Improvement Co.,* 310 U.S. 434, 455, 60 S.Ct. 1044, 1053, 84 L.Ed. 1293 (1940)). *In re Little Creek Development Company,* 779 F. 2d 1068 at 1071-72.

*In re Little Creek Development Company, supra,* addressed the bad faith argument in relation to a motion for relief from the automatic stay. The factors set forth in *Little Creek* generally describe a debtor that cannot propose a confirmable plan and is merely seeking to delay the inevitable loss of its property, just as the Debtor is doing in this case. After discussing such factors, the Court stated the following:

Resort to the protection of the bankruptcy laws is not proper under these circumstances because there is no going concern to preserve, there are no employees to protect, and there is no hope of rehabilitation, except according to the debtor's "terminal euphoria." The Sixth Circuit in *Winshall Settlor's Trust,* 758 F.2d at 1137, aptly noted that [t]he purpose of Chapter 11 reorganization is to assist financially distressed business enterprises by providing them with breathing space in which to return to a viable state. See *In re Dolton Lodge Trust No. 35188,* 22 B.R. 918, 922 (Bankr.N.D.Ill.1982). "[I]f there is not a potentially viable business in place worthy of protection and rehabilitation, the Chapter 11 effort has lost its raison d'etre...." *In re Ironsides, Inc.,* 34 B.R. 337, 339 (Bankr.W.D.Ky.1983). Neither the bankruptcy courts nor the creditors should be subjected to the costs and delays of a bankruptcy proceeding under such conditions. *Little Creek* at 1073.

"At its most fundamental level, the good faith requirement ensures that the Bankruptcy

Code's careful balancing of interests is not undermined by petitioners whose aims are antithetical to the basic purpose of bankruptcy." *Integrated Telecom*, 384 F.3d at 119. The duty of good faith "is necessary to legitimize the delay and costs imposed upon parties to a bankruptcy....Without the duty of good faith, petitioners such as these Debtors could misuse the bankruptcy process to delay creditors without benefiting them in any way." *SGL Carbon*, 200 F.3d. at 161-62 citing *In re Little Creek*, 779 F.2d at 1072.

Two inquiries are particularly relevant to the question of good faith: "(1) whether the petition serves a valid bankruptcy purpose, . . . and (2) whether the petition is filed merely to obtain a tactical litigation advantage." *Integrated Telecom*, 384 Id at 120; accord. *In re Primestone Invest. Partners L.P.*, 272 B.R. 554, 557-58 (D. Del. 2002) ("The focus of the inquiry is whether the petition sought 'to achieve objectives outside the legitimate scope of the bankruptcy laws.'") (quoting *SGL Carbon*, 200 F.3d at 165). The Chapter 11 case commenced by this Debtor fails to evidence the requisite good faith on both accounts.

The threshold question is what are those "valid bankruptcy purposes" against which the conduct of these Debtors should be evaluated? The Third Circuit's recent decision in *Integrated Telecom, supra*, is particularly instructive on this point. The Third Circuit explained: "The Supreme Court has identified two of the basic purposes of Chapter 11 as (1) 'preserving going concerns' and (2) 'maximizing property available to satisfy creditors.'" *Integrated Telecom*, 384 F.3d at 119 (quoting *Bank of Am. Nat'l Trust & Sav. Ass'n v. N. LaSalle St. P'ship*, 526 U.S. 434, 453 (1999)). The court then explained that these purposes are reflected in the reorganization provisions of the Bankruptcy Code and the cases applying them through the common theme of "avoidance of the consequences of economic dismemberment and liquidation, and the preservation of ongoing values in a manner which does equity and is fair to the rights and interests

of the parties affected." *Integrated Telecom,* 384 F.3d at 119 (quoting *SGL Carbon, 200* F.3d at 161).

Of the two purposes mentioned by the Third Circuit only the purpose of "maximizing property available to satisfy creditors" could possibly apply in this case. However, there is no property to preserve since the only property available is in reality a liability. The other purpose is patently inapplicable because this Debtor has no going concern to preserve. The Debtor made the decision at the Petition Date to cease operations at its facility. What remains with the Debtor at this time is merely the detritus of that course of action.

Therefore, the question before this Court is whether this Chapter 11 case can be viewed objectively as "maximizing the value available for creditors" in any meaningful way. As explained by the Third Circuit, "[t]o say that liquidation under Chapter 11 maximizes the value of an entity is to say that there is some value that otherwise would be lost outside of bankruptcy." *Integrated Telecom,* 384 F.3d at 120. The clear answer here is that this Chapter 11 case has no reasonable prospect of making more value available to creditors than would be the case outside of bankruptcy. The case will increase the administrative cost and merely serves to frustrate legitimate creditor action.

There is no value for creditors in this case since CHP simply has no meaningful assets, let alone assets that would be preserved or enhanced in value through the bankruptcy process. "[W]e can identify no value for Integrated's assets that was threatened outside of bankruptcy by the collapse of Integrated's business model, but that could be preserved or maximized in an orderly liquidation under Chapter 11." *Integrated Telecom* 384 F.3d at 122. That is exactly the case presented here where the sole asset of CHP is, in truth, a liability that must be cleaned up under Louisiana state law rather than an asset that can be liquidated to satisfy any claims of creditors.

This Debtor fits the profile in all material respects of bad actors in other cases whose chapter 11 petitions have been rejected as having been filed in bad faith. It has no operations, employees, offices or other indicia of a going concern. It has no source of income. Excepting the cash funded in anticipation of the Debtor's bankruptcy filing, the Debtor has no meaningful assets that could serve as the basis for any reorganization or rehabilitation. In short, the Debtor has nothing of appreciable value to offer its creditors, and its creditors obtain no cognizable benefit from the commencement or continuation of this Chapter 11 case.

It is also well established that filing a Chapter 11 petition merely to obtain a tactical litigation advantage is an independent basis for finding bad faith and dismissing the case. See *Integrated Telecom,* 384 F.3d at 120 and *SGL Carbon,* 200 F.3d at 165 ("[B]ecause filing a Chapter 11 petition merely to obtain tactical litigation advantages is not within 'the legitimate scope of the bankruptcy laws,' courts have typically dismissed Chapter 11 petitions under these circumstances as well.") (quoting *Marsch v. Marsch (In re Marsch),* 36 F.3d 825, 828 (9th Cir. 1994)); *In re Toth,* 269 B.R. 587, 590 (Bankr. W.D. Pa. 2001) ("Several courts have held that the filing of a bankruptcy petition as a litigation tactic. . . is an indication of a bad faith filing."); *In re Ravick Corp.,* 106 B.R. 834, 844 (Bankr. D.N.J. 1989) (stating "[g]enerally, where. . .the filing for relief under the Bankruptcy Code is intended to frustrate the legitimate efforts of creditors to enforce their rights against the debtor, dismissal for 'cause' is warranted."). As one court noted in a Chapter 11 case driven by underlying state law issues:

> These Chapter 11 cases do not represent efforts pitched to a "business reorganization" or to "restructure a business's finances", They are essentially a two-party civil lawsuit involving non-bankruptcy law brought in the bankruptcy court in the guise of being a reorganization of some sort under Chapter 11. Chapter 11 was never intended to be used as a fist in a two party bout. The Chapter is entitled reorganization and not litigation. *In re RBA East, Inc.,* 87 B.R. 248, 260 (Bankr. E.D.N.Y. 1988).

As such, this bad faith filing by CHP should be summarily dismissed.

**B.    THE COURT SHOULD ABSTAIN FROM EXERCISING JURISDICTION OVER THIS CHAPTER 11 CASE PURSUANT TO 11 U.S.C. § 305(A)(1)**

Section 305(a)(1) of the Bankruptcy Code states: "The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceeding in a case under this title, at any time if --- (1) the interests of creditors and the debtor would be better served by such dismissal or suspension." Under the present circumstances, there is little doubt that the interests of the Debtor and the Debtor's creditors would be better served without the cost and delay attendant to this Chapter 11 case.

The court in the case of *In re Mazzocone*, 200 B.R. 568 (E.D. Pa. 1996) acknowledged that the application of § 305(a) is an extraordinary remedy, but found that its use is appropriate when the interests of the creditors and the debtor are best served by dismissal or suspension, citing *In re Runaway II, Inc.*, 168 B.R. 193, 198 (Bankr.W.D.Mo.1994); *In re Realty Trust Corp.*, 143 B.R. 920, 926 (D.N. Mariana Islands 1992); *Business Info. Co.*, 81 B.R. at 387.

In applying Section 305(a), courts have considered a wide range of factors, including, but not limited to, who filed the bankruptcy petition, the availability of another forum to resolve the pending disputes, the necessity of federal proceedings to achieve a just and equitable solution, the expense of the federal proceedings in comparison with proceedings in another forum, the purpose of the party seeking to remain in bankruptcy court, the economy and efficiency of having the bankruptcy court handle the matter and the possible prejudice to the various parties. See, e.g., *In re 801 South Wells Street Ltd. Partnership*, 192 B.R. 718, 723 (Bankr.N.D.Ill.1996); *Realty Trust Corp.*, 143 B.R. at 925-26; *In re Fax Station, Inc.*, 118 B.R. 176, 177 (Bankr.D.R.I.1990).

The court's abstention power should be exercised if the bankruptcy case was filed to

resolve what is essentially a two party dispute. *In re Argus Group, 1700. Inc.*, 206 B.R. 737, 755 (Bankr. E.D. Pa. 1996). As shown in the narrative description of the events leading to the filing of this case, the Debtor and the Movers herein have been locked in state court litigation for several years over allegedly flagrant violations of Louisiana environmental law, regulations, and state court orders. A Louisiana federal court has already remanded the initial case back to the Louisiana state court. This litigation should stay in that court.

In *Argus*, supra, the court used its discretionary power to dismiss litigation which a debtor removed to the bankruptcy court after it had been set to go to trial on multiple counts of state law securities violations, fraudulent misrepresentation and other allegations of improper conduct by defendants, including the debtor.

> The basis for mandatory abstention is set forth in § 1334(c)(2), which states, in relevant part: Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction. 28 U.S.C. § 1334(c)(2).

> As held in *Federal National Mortgage Association v. Rockafellow* (*In re Taylor*), 115 B.R. 498 (E.D.Pa.1990) (adopting report and recommendations of bankruptcy court), mandatory abstention pursuant to the aforementioned provision is appropriate only when the following six requirements are met:

> (1) a timely motion is made;
> (2) the proceeding is based upon a state law claim or state law cause of action;
> (3) the proceeding is a related case under Title 11;
> (4) the proceeding does not arise under Title 11;
> (5) the action could not have been commenced in a federal court absent jurisdiction under 28 U.S.C. § 1334; and
> (6) an action is commenced, and can be timely adjudicated, in a state forum of appropriate jurisdiction. *Argus*, supra, at pp. 747-748.

The *Argus* court found that factor number five was not met, but that it should exercise

discretionary abstention saying:

> Section 1334 (c)(1) states:

> Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11. 28 U.S.C. § 1334(c)(1).

> In determining whether to exercise discretionary abstention under this section, courts focus upon a variety of factors. Some courts apply the following list of factors: (1) the effect or lack thereof on efficient administration of the estate; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of applicable state law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than the form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden of the bankruptcy court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; and (11) the presence of nondebtor parties. *Argus*, supra, at p. 751

Here, all of the applicable factors point toward voluntary abstention from hearing this Chapter 11 case. First and foremost, there is no need for this case because there is no going concern value to protect or meaningful assets to maximize or preserve. Simply put, this estate will not benefit from the exercise of bankruptcy jurisdiction. Second, the purpose of the filing was clearly to avoid the Louisiana state court action, even though the Louisiana federal court had already ruled that the disputes belonged in state court. Third, the bankruptcy case adds another layer of expense and delay to what simply boils down to litigation of state law issues between the Debtor and a small group of citizens statutorily enforcing Louisiana's environmental regulations at this hazardous waste site pursuant to Louisiana state laws. Fourth, there is nothing in this litigation that requires bankruptcy court expertise. To the contrary, the litigation solely involves

Louisiana state environmental law. It is respectfully submitted that it would be an abuse and a misdirection of the bankruptcy courts resources to attempt to resolve this matter. The issues involved in this case have been actively litigated in Louisiana courts for years and the Louisiana courts are thoroughly competent and willing to timely resolve them. This debtor and others are already subject to (and alleged to be actively violating) restraining orders and injunctions issued by those courts and those courts are the proper forums to resolve those issues.

The *Argus* court found that the adversary proceeding in question should be dismissed pursuant to § 1334 (c)(1) and that the Chapter 11 bankruptcy case should be dismissed pursuant to § 1112 (b) and/or § 305 (a) "as there was no reorganization purpose to be served by it." *Argus* at p. 756.

In sum, virtually all of the considerations that warrant the dismissal of this case for bad faith also support this Court in exercising its discretion to abstain from hearing these Chapter 11 Cases under § 305(a) of the Bankruptcy Code. See *Canzano v. Ragosa (In re Colaruso)*, 382 F. 3d 51 (1st Cir. 2004), *New England Power & Marine, Inc. v. Town of Tyngsborough*, 292 F.3d 61 (1st Cir. 2002), and *In re Drake*, 336 B.R. 155 (Bankr. D. Mass. 2006). The egregious circumstances of this case justify the use of abstention to dismiss it.

C.     RELIEF FROM THE AUTOMATIC STAY SHOULD BE GRANTED

Section 362 of the United States Bankruptcy Code operates a stay of the commencement or continuation of judicial proceedings against the debtor. 11 U.S.C. §362(a)(1). The purpose of the stay in a Chapter 11 reorganization is to allow the debtor breathing room so it has the opportunity to "return to a viable state." *In re C-TC 9th Avenue Partnership v. Norton Company, Maplewood Colonie Common School, and the Town of Colonie*, 113 F3d. 1304, 1310 (2d Cir. 1997)

The automatic stay imposed by Section 362 may be modified by the Court. Section 362(d)(1) of the Bankruptcy Code provides, in relevant part,

> (d)    On request of a party in interest and after notice and a hearing, the Court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay --
>
> > (1) **for cause**, including the lack of adequate protection of an interest in property of such party in interest.

11 U.S.C. § 362(d)(1) (emphasis added). The Bankruptcy Code does not define "cause." However, courts recognize that "cause," as the term is used in a Section 362(d)(1) analysis, must be determined on a case-by-case basis. See *In re Rexene Prod. Co.*, 141 B.R. 574, 576 (Bankr. D. Del. 1992) (Balick, J.) (citing *IBM v. Fernstrom Storage and Van Co.*, 938 F.2d 731 (7th Cir. 1991). Moreover, it is well-established that Section 362(d)(1) relief is not limited to situations involving a party's lack of adequate protection. See *In re Turner*, 161 B.R. 1, 3 (Bankr. D. Me. 1993). Rather, "cause" may exist "whenever the stay harms the creditor and lifting the stay will not unduly harm the debtor or the debtor's estate," *id.*, see also *In re Spencer*, 115 B.R. 471, 476 (D. Del. 1990)), or when the potential prejudice to the debtor's estate is outweighed by the hardships that a party seeking relief from the stay has incurred, or will incur in the future, absent modification or termination of the stay, *In re Robbins*, 964 F.2d 342, 245 (4th Cir. 1992).

The legislative history of Section 362 of the Bankruptcy Code makes clear that a party's "desire to permit an action to proceed to completion in another tribunal may provide . . . cause" under Section 362 (d)(1) of the Bankruptcy Code. H.R. Rep. No. 595, 95th Cong., 1st Sess. 340-44 (1977). The House Report further explains Congress' concept of "cause" as it relates to litigation as follows:

> [I]t will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order

to leave the parties to their chosen forum and to relieve the bankruptcy court from any duties that may be handled elsewhere.

H.R. Rep. No. 595, 95th Cong., 1st Sess. 341 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 50 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5836, 6279.

Courts in other Circuits have developed a series of factors a court is to consider when making a determination as to cause for stay relief. One notable example is the list of factors catalogued by the Second Circuit in *In re Sonnax Indus.*, 907 F.2d 1280 (2d Cir. 1990):

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of the litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) [the] impact of the stay on the parties and the balance of the harms.

*Id.* at 1286. See also, e.g., *Tricare Rehabilitation Systems, Inc.*, 181 B.R. 569, 573-74 (Bankr. N.D. Ala. 1994) (accumulating factors to consider in balancing the equities in various other opinions). Whether to modify the automatic stay is at the discretion of the bankruptcy judge. *Sonnax*, 907 F.2d 1280, 1286.

Several factors noted in *Sonnax* are present in the instant case. First, relief from the stay would result in an ultimate and complete resolution of the issues raised in the Louisiana Litigation. The extent and resolution of the environmental damage will be determined by the Louisiana courts. Remediation plans have been ordered prepared, have been developed and are awaiting court-ordered implementation. The fourth factor applies as Louisiana courts are best

suited to resolve the Louisiana Litigation, since these matters require the application of Louisiana environmental laws and regulations. The State court system has litigated these highly technical issues for years. The fifth factor applies as an insurer, Steadfast Insurance Company, is providing a defense. The sixth factor may be applicable as CHI has informed the Securities and Exchange Commission that the property contamination involve acts by the former site manager, previous owners, and other responsible parties such as those discussed herein above. The seventh factor is applicable as the Louisiana Litigation will not prejudice the rights of other creditors. As to the ninth factor, the Louisiana Litigation will not result in an avoidable judicial lien. The tenth factor, judicial economy and the expeditious and economical resolution of the litigation, favors relief from the automatic stay. While the Debtor's principal place of business is Massachusetts, virtually all of its former employees that would serve as witnesses in the Louisiana Litigation are located in Louisiana. Also, all of the plaintiffs to the Louisiana Litigation are located in Louisiana. Should this Court preside over the Louisiana Litigation, virtually all witnesses would have to travel from Louisiana to Massachusetts to attend hearings, greatly increasing expenses to all parties. Both sides of the Louisiana Litigation may also be prejudiced as almost all witnesses reside over 100 miles from the Court, and would not be subject to the Court's subpoena powers. Finally, as the Louisiana Litigation has been progressing in the Louisiana courts, these matters can be brought to trial much sooner in Louisiana than if these matters were resolved through this Court.

The bad faith filing of a bankruptcy case may constitute cause for relief from the automatic stay:

> It is extremely common occurrence that a debtor in Chapter 11, 12 or 13 wishes to move a vitriolic matrimonial proceeding, mortgage foreclosure, or tort suit into the bankruptcy forum, and then attempt to utilize the bankruptcy forum as a sword- a new weapon in the arsenal of vitriol. Without exception, this Court does not permit such a tactic. The rehabilitative chapters of the Code provide a means for

debtor to address his or her obligations with honesty of intention, by paying them in whole or in part. Those chapters are not a means to unfairly deflect accountability. *In re Kaplan*, 264 B.R. 309, 335-3366 (Bankr. S.D.N.Y. 2001).

The factors to consider in determining the propriety of modifying the stay based upon bad faith are the same as those courts often consider in determining whether to dismiss a bankruptcy case:

1. The debtor has one asset;
2. Secured creditors' liens encumber the asset;
3. There are generally no employees except for the principals and there is no ongoing business activity.
4. The debtor has little or no cash flow and no available sources of income to sustain a plan of rec
5. There are few, if any, unsecured creditors whose claims are relatively small;
6. There are allegations of wrong doing by the debtor or its principals;
7. The timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of secured creditors to enforce their rights;
8. The debtor is afflicted with the "new debtor's syndrome" in which a one     asset entity is credi
9. There is no realistic possibility of reorganization of the debtor's business;
10. The reorganization essentially involves a two –party dispute; and
11. Bankruptcy offers the only possibility of forestalling loss of the property.

*In re Long Bay Dunes Homeowners Association, Inc.*, 246 B.R. 801, 805 (Bankr. S.C. 1999).

See also *In re MacInnis*, 235 B.R. 255 (Bankr. S.D. N.Y. 1998).

1. MODIFICATION OF THE AUTOMATIC STAY IS PROPER IN THIS CASE.

Although nominally filed as a Chapter 11 case, the Debtor has no business or going concern to reorganize or rehabilitate. The Debtor has virtually no assets, and, since the Debtor has ceased all operations, presumably it has no income and no employees. Debtor's counsel has advised that CHP's bankruptcy will be funded by CHI, which will only create additional inter-company debt to CHI.

It is apparent that the bankruptcy case was merely filed to disrupt the Louisiana Litigation. It was the only means CHP had of avoiding a determination by the State Court with respect to whether it had liability for the pollution of the Bayou Sorrell property. CHP's bankruptcy case is

effectively an attempt to resolve the Louisiana Litigation here by forcing the Parties and others to subject themselves to the bankruptcy claims process even though CHP has no meaningful assets to distribute.

While the Debtor has not filed its Schedules and Statement of Financial Affairs, upon information and belief the only asset of the Debtor is its real property and facility located in Iberville Parish, Louisiana, from which it operated its hazardous waste storage tanks and deep well injection system until its recent closure. Due to the claims set forth in the Louisiana Litigation and prior determinations of ground contamination, that asset has no value. Presumably, CHP has claims against ExxonMobil Corporation, Waste Management, Inc., Lyondell Chemical Corporation and Syngenta Crop Protection, Inc., as responsible parties for the ground contamination. However, CHP has indicated that it would not seek assistance or contribution from those responsible parties, because some or all are major customers of CHI and other affiliates. Therefore, there is no realistic possibility of reorganization of the Debtor's business.

The facts and circumstances support the modification of the automatic stay to allow the resolution of the liability of CHP, CHI, and other defendants in the Louisiana Litigation, and to determine an appropriate clean-up plan to so that remediation of the property in Bayou Sorrel can begin. All of the facts support the finding of cause based on lack of good faith to warrant modification of the automatic stay.

The proximity to trial and extensive trial preparation by both parties also weighs in favor of allowing the State Court Litigation to proceed. See, e.g., *Agribank v. Fay (In re Fay)*, 155 B.R. 1009, 1011 (Bankr. E.D. Mo. 1993) ("[W]hen an election is made to commence the bankruptcy case on the eve of trial of the nonbankruptcy proceeding, a debtor may be expected to stand ready to respond in the bankruptcy court to a defensive action such as a motion for relief

from the automatic stay."); *Rexene,* 141 B.R. at 575 & 577 (finding no great prejudice to debtor where discovery nearly complete and trial likely to occur within six weeks). There is no question that CHP elected to file its bankruptcy case when it would be most prejudicial to the Movers. A hearing on motion to hold CHP in contempt was scheduled for October 18, 2006, and a hearing on a preliminary injunction to enjoin CHP was scheduled for October 23, 2006. Also, Giauque, Bertrand, and Larson are awaiting a decision on a writ application to the Louisiana Supreme Court regarding injunctive relief prohibiting the disposal of hazardous waste into a Class I underground injection well that is located within the banks or boundaries of a body of surface water within the jurisdiction of the state of Louisiana.

As previously discussed, the Louisiana Litigation arises under Louisiana environmental law and the United States District Court for the Middle District of Louisiana has already ruled that the disputes belong in state court. The interests of the parties to the Louisiana Litigation as well as this Court would be better served by allowing a Louisiana court familiar with the applicable environmental law to resolve these matters. Furthermore, the plaintiffs in the *Allen* Louisiana Litigation have requested a jury. This Court does not have the authority to conduct jury trials. The right to a jury also supports the modification of the automatic stay in this case. See, e.g., *In re Salisbury,* 123 B.R. 913, 916 (S.D. Ala. 1990) (considering right to jury trial as equitable consideration weighing in favor of stay relief); *Murray v. On-Line Business Systems, Inc. (In re Revco D.S., Inc.)*, 99 B.R. 768, 777 (N.D. Ohio 1989) (same); see also *In re Marvin Johnson's Auto Service, Inc.*, 192 B.R. 1008, 1019 (Bankr. N.D. Ala. 1996) ("[A] claimant's right to a jury trial should be accommodated if circumstances allow it to be done without substantial prejudice to estate administration.").

The timing of the bankruptcy filing, along with the other factors discussed, support the

modification of the automatic stay to allow the Parties to pursue the claims against CHP in the Louisiana courts.

While movers do not claim that continuation of the Louisiana Litigation is excepted from the automatic stay as enforcement of a governmental unit or organization's police and regulatory power provision of §362(b)(4), it should be noted that the plaintiffs in the citizen suits are in fact standing in the shoes of the LDEQ, a governmental entity. All penalties assessed by the Louisiana court for violations of Louisiana law in the citizen suits "shall be awarded to and collected by the state of Louisiana and deposited into the state treasury." LSA-R.S. 30:2026(A)(3).

[this space intentionally left blank]

## IV.  CONCLUSION

For the foregoing reasons, Movers respectfully urge this Honorable Court to dismiss this case or, alternatively, suspend proceedings herein and abstain in favor of the Louisiana state courts, or, alternatively, modify the stay so that the Louisiana Litigation may proceed to trial and final resolution unfettered by the automatic stay.  Continuation of this case in bankruptcy court conflicts with fundamental principles of the Bankruptcy Code and serves no legitimate purpose.

Respectfully Submitted,

**HANIFY & KING, P.C.**
One Beacon Street, 21st Floor
Boston, MA 02108
Phone:  617-423-0400
Fax:  617-556-8985

By:  /s/ D. Ethan Jeffery
Harold B. Murphy (BBO # 362610)
D. Ethan Jeffery (BBO # 631941)

-and-

**STEFFES, VINGIELLO, & MCKENZIE, LLC**
13702 Coursey Boulevard, Building 3
Baton Rouge, LA 70817
Telephone: (225) 751-1751
Telecopier: (225) 751-1998
William E. Steffes (La.#12426)
Arthur A. Vingiello (La. #13098)
Patrick S. Garrity (La. #23744)

Official Form 4
10/05

# United States Bankruptcy Court
## District of Massachusetts

In re  Clean Harbors Plaquemine, LLC _____ , Case No. 06-13728 _____

Debtor

Chapter  11 _____

# List Of Creditors Holding 20 Largest Unsecured Claims

| (1)<br>Name of creditor and complete mailing address including zip code | (2)<br>Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted | (3)<br>Nature of claim (trade debt, bank loan, government contract, etc.) | (4)<br>Indicate if claim is contingent, unliquidated, disputed or subject to setoff | (5)<br>Amount of claim [if secured also state value of security] |
|---|---|---|---|---|
| Louisiana DEQ<br>PO Box 4311<br>Baton Rouge, LA 70821 | Louisiana DEQ<br>PO Box 4311<br>Baton Rouge, LA 70821 | Permit Fee | | $234,943.60 |
| Air Nu of Baton Rouge, LLC<br>11340 Industriplex Blvd.<br>Baton Rouge, LA 70809 | Air Nu of Baton Rouge, LLC<br>11340 Industriplex Blvd.<br>Baton Rouge, LA 70809 | Trade | | $11,649.94 |
| Williams Scotsman Incorporated<br>PO Box 91975<br>Chicago, IL 60693 | Williams Scotsman Incorporated<br>PO Box 91975<br>Chicago, IL 60693 | Trade | | $7,848.00 |
| Schwing Mgmt., LLC<br>9422 Common Street<br>Baton Rouge, LA 70809 | Schwing Mgmt., LLC<br>9422 Common Street<br>Baton Rouge, LA 70809 | Royalty | | $4,680.54 |
| Subsurface Construction Corp.<br>11800 Indistriplex Blvd.<br>Suite 15<br>Baton Rouge, LA 70809 | Subsurface Construction Corp.<br>11800 Indistriplex Blvd.<br>Suite 15<br>Baton Rouge, LA 70809 | Trade | | $4,010.00 |



EXHIBIT
A

In re  Clean Harbors Plaquemine, LLC

Debtor

Case No.  06-13728

Chapter  11

# List Of Creditors Holding 20 Largest Unsecured Claims

| (1)<br><br>Name of creditor and complete mailing address including zip code | (2)<br><br>Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted | (3)<br><br>Nature of claim (trade debt, bank loan, government contract, etc.) | (4)<br><br>Indicate if claim is contingent, unliquidated, disputed or subject to setoff | (5)<br><br>Amount of claim [if secured also state value of security] |
|---|---|---|---|---|
| Williams Scotsman Inc.<br>8211 Town Center Drive<br>Baltimore, MD 21236 | Williams Scotsman Inc.<br>8211 Town Center Drive<br>Baltimore, MD 21236 | Trade | | $2,606.20 |
| Lowes<br>10303 S. Mall Drive<br>Baton Rouge, LA 70809 | Lowes<br>10303 S. Mall Drive<br>Baton Rouge, LA 70809 | Trade | | $2,178.91 |
| Pitney Bowes Credit Corp. KY<br>PO Box 856460<br>Louisville, KY 40285 | Pitney Bowes Credit Corp. KY<br>PO Box 856460<br>Louisville, KY 40285 | Trade | | $1,069.20 |
| Lubemaster Construction DIV<br>PO Box 971269<br>Dallas, TX 75397 | Lubemaster Construction DIV<br>PO Box 971269<br>Dallas, TX 75397 | Trade | | $949.16 |
| Best Impressions<br>401 Wolcott Street<br>Pawtucket, RI 02860 | Best Impressions<br>401 Wolcott Street<br>Pawtucket, RI 02860 | Trade | | $453.55 |
| SGS Petroleum Service Corp.<br>725 Main Street<br>Baton Rouge, LA 70802 | SGS Petroleum Service Corp.<br>725 Main Street<br>Baton Rouge, LA 70802 | Trade | | $450.00 |

In re **Clean Harbors Plaquemine, LLC**        Case No. <u>06-13728</u>

           Debtor        Chapter :11

# List Of Creditors Holding 20 Largest Unsecured Claims

| (1) Name of creditor and complete mailing address including zip code | (2) Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted | (3) Nature of claim (trade debt, bank loan, government contract, etc.) | (4) Indicate if claim is contingent, unliquidated, disputed or subject to setoff | (5) Amount of claim [if secured also state value of security] |
|---|---|---|---|---|
| Fisher Scientific<br>9403 Kenwood Road<br>Cincinnati, OH 45242 | Fisher Scientific<br>9403 Kenwood Road<br>Cincinnati, OH 45242 | Trade | | $352.00 |
| Rental Service Corporation Ntnl.<br>6929 E. Greenway Pkwy.<br>Suite 200<br>Scottsdale, AZ 85254 | Rental Service Corporation Ntnl.<br>6929 E. Greenway Pkwy.<br>Suite 200<br>Scottsdale, AZ 85254 | Trade | | $260.44 |
| Innovative Waste<br>12537 Scenic HWY<br>Baton Rouge, LA 70807 | Innovative Waste<br>12537 Scenic HWY<br>Baton Rouge, LA 70807 | Trade | | $260.00 |
| McJunkin Corporation<br>PO Box 513<br>Charleston, WV 25322 | McJunkin Corporation<br>PO Box 513<br>Charleston, WV 25322 | Trade | | $221.40 |
| Airgas Gulf States<br>PO Box 120333<br>Dept. 033<br>Dallas, TX 75312 | Airgas Gulf States<br>PO Box 120333<br>Dept. 033<br>Dallas, TX 75312 | Trade | | $191.38 |
| Bayou Oil Field Construction Co. Inc.<br>26105 HWY 77<br>Plaquemine, LA 70764 | Bayou Oil Field Construction Co. Inc.<br>26105 HWY 77<br>Plaquemine, LA 70764 | Trade | | $180.00 |

In re Clean Harbors Plaquemine, LLC                    , Case No. 06-13728

                                    Debtor          Chapter    11

# List Of Creditors Holding 20 Largest Unsecured Claims

| (1)<br>Name of creditor and complete mailing address including zip code | (2)<br>Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted | (3)<br>Nature of claim (trade debt, bank loan, government contract, etc.) | (4)<br>Indicate if claim is contingent, unliquidated, disputed or subject to setoff | (5)<br>Amount of claim [if secured also state value of security] |
|---|---|---|---|---|
| White Castle Fertilizer<br>PO Box 250<br>White Castle, LA 70788 | White Castle Fertilizer<br>PO Box 250<br>White Castle, LA 70788 | Trade | | $179.90 |
| Total Safety<br>PO Box 634366<br>Cincinnati, OH 45263 | Total Safety<br>PO Box 634366<br>Cincinnati, OH 45263 | Trade | | $146.48 |
| Bayou Road Lumber Hardware LLC<br>58005 Bayou Road<br>Plaquemine, LA 70764 | Bayou Road Lumber Hardware LLC<br>58005 Bayou Road<br>Plaquemine, LA 70764 | Trade | | $90.71 |

## DECLARATION UNDER PENALTY OF PERJURY
## ON BEHALF OF A CORPORATION OR PARTNERSHIP

I, , of the Corporation named as the debtor in this case, declare under penalty of perjury that I have read the foregoing list and that it is true and correct to the best of my information and belief.

Date: _10-20-2006_                    Signature: _William J Geary_

_WILLIAM J. GEARY, MANAGER_
(Print Name and Title)

Penalty for making a false statement or concealing property. Fine of up to $500,000 or imprisonment for up to 5 years or both. 18 U.S.C §§ 152 and 3571.



Exhibit "B"

# Facility Update

## Clean Harbors Plaquemine, LLC

**Plaquemine, LA – October 17, 2006** – This update is to advise interested parties that the decision has been made to close the Clean Harbors Plaquemine, LLC (CHPLLC) deep injection well facility located near Plaquemine, Louisiana, effective immediately. The CHPLLC is an "insignificant subsidiary" and the closure of the facility will not have any significant financial impact on the parent company or any of its other affiliates. As previously disclosed in various SEC filings, the Plaquemine facility has been involved in contentious litigation since it was acquired in late 2002, including one case that has been pending since 1996 against the prior owners and operators of this facility. This ongoing litigation now comprises a total of five lawsuits against the facility, and recent efforts to achieve an equitable global settlement of this litigation have been unsuccessful.

CHPLLC has filed for protection under Chapter 11 from the United States Bankruptcy Court. It is important to emphasize that CHPLLC is an "insignificant subsidiary" within the Clean Harbors companies, and this action should have no effect on any of the other Clean Harbors subsidiaries.

This Chapter 11 filing for this single limited liability company will not affect any of the operations at any other Clean Harbors facilities throughout North America. It will be business as usual at all other Clean Harbors locations, and we look forward to continuing to provide the quality customer service that has established us as the premier provider of environmental services in North America.

CHPLLC's plan of reorganization will ensure that all of that facility's environmental and site clean up obligations will be met and that all permit requirements will be met. Management of the Plaquemine facility, along with others at Clean Harbors, will continue to work with the Louisiana Department of Environmental Quality to ensure that the clean-up methodology will be technically superior. Waste shipments will be redirected so that there will be an orderly transition for all customers of the Plaquemine facility.

**Contacts:**

Investor Inquiries   Stephen Moynihan
Senior Vice President, Treasurer
781.792.5200

Customer Inquires   Mike Barnett
Baton Rouge District Sales Manager
225.778.1234

Other Inquiries   Bill Geary
Executive Vice President and General Counsel
781.792.5130



**ENVIRONMENTAL SERVICES®**

Clean Harbors Plaquemine, LLC • 32655 Gracie Lane • Plaquemine, LA 70764 • 800.282.0058 • www.cleanharbors.com



EXHIBIT
C

(Official Form 1) (12/03)

| FORM B1 | United States Bankruptcy Court District of Massachusetts | Voluntary Petition |
|---|---|---|

| Name of Debtor (if individual, enter Last, First, Middle): **Clean Harbors Plaquemine, LLC** | Name of Joint Debtor (Spouse)(Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 6 years (include married, maiden, and trade names): **N/A** | All Other Names used by the Joint Debtor in the last 6 years (include married, maiden, and trade names): |
| Last four digits of Soc. Sec. No. / Complete EIN or other Tax I.D. No. (if more than one, state all): **56-2295280** | Last four digits of Soc. Sec. No. / Complete EIN or other Tax I.D. No. (if more than one, state all): |
| Street Address of Debtor (No. & Street, City, State & Zip Code): **42 Longwater Drive** **Norwell, MA 02061** | Street Address of Joint Debtor (No. & Street, City, State & Zip Code): |
| County of Residence or of the Principal Place of Business: **Plymouth** | County of Residence or of the Principal Place of Business: |
| Mailing Address of Debtor (if different from street address): **42 Longwater Drive** **P.O. Box 9149** **Norwell, MA 02061-9149** | Mailing Address of Joint Debtor (if different from street address): |
| Location of Principal Assets of Business Debtor (if different from street address above): **Plaquemine, Louisiana** | |

## Information Regarding the Debtor (Check the Applicable Boxes)

**Venue** (Check any applicable box)

☒ Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

☐ There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

| **Type of Debtor** (Check all boxes that apply) | | **Chapter or Section of Bankruptcy Code Under Which the Petition is Filed** (Check one box) | | |
|---|---|---|---|---|
| ☐ Individual(s) | ☐ Railroad | ☐ Chapter 7 | ☒ Chapter 11 | ☐ Chapter 13 |
| ☒ Corporation | ☐ Stockbroker | ☐ Chapter 9 | ☐ Chapter 12 | |
| ☐ Partnership | ☐ Commodity Broker | ☐ Sec. 304 - Case ancillary to foreign proceeding | | |
| ☐ Other | ☐ Clearing Bank | | | |

| **Nature of Debts** (Check one box) | **Filing Fee** (Check one box) |
|---|---|
| ☐ Consumer/Non-Business  ☒ Business | ☒ Full Filing Fee Attached |
| **Chapter 11 Small Business** (Check all boxes that apply) | ☐ Filing Fee to be paid in installments (Applicable to individuals only) Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form No. 3. |
| ☐ Debtor is a small business as defined in 11 U.S.C. § 101 ☒ Debtor is and elects to be considered a small business under 11 U.S.C. § 1121(e) (Optional) | |

| **Statistical/Administrative Information** (Estimates only) | THIS SPACE IS FOR COURT USE ONLY |
|---|---|

☒ Debtor estimates that funds will be available for distribution to unsecured creditors.

☐ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors.

| Estimated Number of Creditors | 1-15 | 16-49 | 50-99 | 100-199 | 200-999 | 1000-over |
|---|---|---|---|---|---|---|
| | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

Estimated Assets

| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | More than $100 million |
|---|---|---|---|---|---|---|---|
| ☐ | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |

Estimated Debts

| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | More than $100 million |
|---|---|---|---|---|---|---|---|
| ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ |

EXHIBIT D

| Voluntary Petition<br>*(This page must be completed and filed in every case)* | Name of Debtor(s): **Clean Harbors Plaquemine, LLC** | |
|---|---|---|

| **Prior Bankruptcy Case Filed Within Last 6 Years (If more than one, attach additional sheet)** | | |
|---|---|---|
| Location<br>Where Filed: **NONE** | Case Number: | Date Filed: |

| **Pending Bankruptcy Case Filed by any Spouse, Partner or Affiliate of this Debtor (If more than one, attach additional sheet)** | | |
|---|---|---|
| Name of Debtor:<br>**NONE** | Case Number: | Date Filed: |
| District: | Relationship: | Judge: |

## Signatures

| **Signature(s) of Debtor(s) (Individual/Joint)** | **Exhibit A** |
|---|---|
| I declare under penalty of perjury that the information provided in this petition is true and correct.<br>[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12 or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7. I request relief in accordance with the chapter of title 11, United States Code, specified in this petition. | (To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11)<br>☑ Exhibit A is attached and made a part of this petition. |

**X   Not Applicable**
Signature of Debtor

**X   Not Applicable**
Signature of Joint Debtor

Telephone Number (If not represented by attorney)

Date

**X** *[signature]* **Signature of Attorney**
Signature of Attorney for Debtor(s)

**Whitton E. Norris, 373970**
Printed Name of Attorney for Debtor(s) / Bar No.

**Davis, Malm & D'Agostine, PC**
Firm Name

**One Boston Place 37th Floor**
Address

**Boston, MA  02108**

**617-367-2500**            **617-742-2741**
Telephone Number

**10/17/06**
Date

### Signature of Debtor (Corporation/Partnership)

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.
The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

**X** *[signature]*
Signature of Authorized Individual

**William J. Geary**
Printed Name of Authorized Individual *[handwritten] + ASS'T SECRETARY*

**Executive Vice President/General Counsel** *[handwritten] MANAGER*
Title of Authorized Individual

**10/17/06**
Date

---

**Exhibit B**
(To be completed if debtor is an individual whose debts are primarily consumer debts)

I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter.

**X   Not Applicable**
Signature of Attorney for Debtor(s)            Date

**Exhibit C**

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☐    Yes, and Exhibit C is attached and made a part of this petition.

☑    No

**Signature of Non-Attorney Petition Preparer**

I certify that I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110, that I prepared this document for compensation, and that I have provided the debtor with a copy of this document.

**Not Applicable**
Printed Name of Bankruptcy Petition Preparer

Social Security Number (Required by 11 U.S.C. § 110(c).)

Address

Names and Social Security numbers of all other individuals who prepared or assisted in preparing this document:

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

**X   Not Applicable**
Signature of Bankruptcy Petition Preparer

Date

A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 11 U.S.C. § 110; 18 U.S.C. § 156.

# United States Bankruptcy Court
## District of Massachusetts

In re    **Clean Harbors Plaquemine, LLC**

Case No.

Chapter    **11**

# Exhibit "A" to Voluntary Petition

1.    If any of debtor's securities are registered under section 12 of the Securities and Exchange Act of 1934, the SEC file number is **N/A**.

2.    The following financial data is the latest available information and refers to debtor's condition on .

a.    Total assets                                                          $ _____

b.    Total debts (including debts listed in 2.c., below)       $ _____**200,170,000.00**

Approximate
number of
holders

c.    Debt securities held by more than 500 holders.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| secured | ☐ | unsecured | ☐ | subordinated | ☐ | **$200,000,000.00** | **0** |
| secured | ☐ | unsecured | ☑ | subordinated | ☐ | **$170,000.00** | **0** |
| secured | ☐ | unsecured | ☐ | subordinated | ☑ | **$0.00** | **0** |

d.    Number of shares of preferred stock                    _____    _____

e.    Number of shares of common stock                      _____    _____

Comments, if any:

**Debtor is a Delaware Limited Liability Company with one member.**

3.    Brief description of debtor's business:

**Deep Injection Hazardous Waste Facility.**

4.    List the name of any person who directly or indirectly owns, controls, or holds, with power to vote, 5% or more of the voting securities of debtor:

**Clean Harbors Disposal Services, Inc. (sole member).**

## Secretary's Certificate

## Clean Harbors Plaquemine, LLC

The undersigned, C. Michael Malm, herby certifies he is the duly elected and acting Secretary of Clean Harbors Plaquemine, LLC, a Delaware limited liability company (the "Company") amd that the following resolutions were duly adopted by the Managers of the Company on October 6, 2006, and that the same have not been altered, amended or revoked and remain in full force and effect as of the date hereof.

**RESOLVED:** That the Company be and hereby is authorized to file a voluntary petition under chapter 11 of title 11 of the United States Code (the "Petition");

**RESOLVED:** That William J. Geary, Vice President, is authorized and directed to execute the Petition on behalf of the Company, and thereafter to make all decisions on behalf of the Company relating to the prosecution and/or defense of the Petition available to the Company under chapter 11 of title 11 of the United States Code;

**RESOLVED:** That the Company is hereby authorized to retain Whitton E. Norris III and Davis, Malm & D'Agostine, P.C. of Boston, Massachusetts as outside bankruptcy counsel for the Company; and

**RESOLVED:** That William J. Geary is authorized on behalf of the Company, and thereafter to make all decisions on behalf of the Company, relating to the engagement of outside professionals to assist the Company with respect to its prosecution and/or defense of the Petition.

Witness the execution hereof under seal of the Company as of this 11th day of October, 2006

C. Michael Malm, Secretary

EXHIBIT

E

18TH JUDICIAL DISTRICT COURT FOR THE PARISH OF IBERVILLE
STATE OF LOUISIANA

NO. 60,195                                        DIVISION "A"

TERRY GIAUQUE, MELLISSA BERTRAND AND DARLA LARSON
INDIVIDUALLY AND ON BEHALF OF THE MINOR CHILD ALLIE
LARSON

VERSUS

CLEAN HARBORS PLAQUEMINE, L.L.C. and MICHAEL A. SULLIVAN

**RULING**

This Motion to Enforce the Temporary Restraining Order Granting Preliminary Injunction and Ordering Immediate Clean Up Plan and Clean Up on behalf of the Plaintiffs came before this Court on May 18, 19, 2006 at which time this matter was taken under advisement. Having considered the memoranda submitted by the Parties and the evidence and arguments presented at trial, this Court makes the following ruling.

This Court finds that the New Area of Concern presents an imminent and substantial endangerment to health and the environment. The evidence presented at trial sufficiently demonstrates that the pits in the New Area of Concern were built and used for the storage and disposal of chemical waste actually placed into those pits. The evidence also shows that chemical waste was left in the pits when the pits were filled with soil. This Court finds that there has been migration from the New Area of Concern, and that there is significant risk of additional migration. Evidence submitted by both Parties demonstrates that chemical contamination of the soil and groundwater in and around this pollution source is widespread and substantial.

In addition to groundwater pollution that has migrated far beyond the boundaries of the five pits, there is chemical contamination in very shallow soils that are frequently soaked with rain, flood and other surface water. That water is allowed to freely flow into surrounding areas. Most importantly, this shallow chemical contamination is also located in an area that is accessible to humans and wildlife. All of the above pose a serious threat to life and property.

This Court finds that the May 4, 2004 Temporary Restraining Order was stipulated to by the Parties, and it has remained in full force and effect by agreement of the Parties. This Court also finds that the Defendants are in total disregard for that Restraining Order



JAMES J. BEST
Judge, Division A
18th Judicial District
P.O. Box 536
New Roads, LA 70760

EXHIBIT

F

Sullivan No. 5306

06

as though the Order had never existed. Further, the Defendant failed to take prompt remedial action, thus violating La.R.S. 30:2203.

The Motion to Enforce the Temporary Restraining Order Granting Preliminary Injunction and Ordering Immediate Clean Up Plan and Clean Up is **GRANTED** for reasons stated above and for reasons stated in the Plaintiffs' memoranda adopted by this Court as its own.

Both Parties are **ORDERED** to agree on and submit a stipulated Clean Up Plan or in the alternative, if the Parties fail to agree on a Clean Up Plan, each party shall submit an individual Clean Up Plan consistent with the plan **PRAYED** for by the Plaintiffs in their brief no later than July 10, 2006. At which time, this Court will determine the appropriate course of action.

Signed this _9_ day of June, 2006 in New Roads, Louisiana.

_Judge James J. Best_
Judge James J. Best
18th Judicial District Court, Division A

JAMES J. BEST
Judge, Division A
18th Judicial District
P.O. Box 536
New Roads, LA 70760

FILED

2006 JUN 14 A 9 49

BY DEPUTY CLERK, EX-OFFICIAL
IBERVILLE, LOUISIANA

**CLERK: PLEASE FORWARD NOTICE TO ALL COUNSEL OF RECORD**

A TRUE COPY

DATE _____

Deputy Clerk, Ex-officio, Recorder, Iberville Parish, Louisiana

18TH JUDICIAL DISTRICT COURT FOR THE PARISH OF IBERVILLE

STATE OF LOUISIANA

NO. 60,195                                              DIVISION "A"

TERRY GIAUQUE, MELISSA BERTRAND AND DARLA R. LARSON individually

and on behalf of the minor child ALLIE LARSON

VERSUS

CLEAN HARBORS PLAQUEMINE, L.L.C. and MICHAEL A. SULLIVAN

**RULING OF COURT**

A hearing on Plaintiff's Petition for Preliminary Injunction was held before this

Court on November 15-16, 2004. Per this Court's Order, this matter was taken under

advisement and post trial memoranda were submitted by the parties.

This Court, having carefully considered the evidence presented at the hearing,

together with the memoranda submitted by the Parties, hereby *GRANTS* Plaintiff's

Petition for Preliminary Injunction, for reasons stated in the Memoranda in Support of

said Petition, adopted by this Court as it's own.

Signed this 14th day of January, 2005 in New Roads, Louisiana.



JAMES J. BEST
Judge, Division A
18th Judicial District
P.O. Box 536
New Roads, LA 70760

Judge James J. Best, Division "A"
18th Judicial District Court

FILED

2005 JAN 19 P 1:41

D. HILL, EX-OFFICIO
IBERVILLE, LOUISIANA

**CLERK:  PLEASE FORWARD NOTICE TO ALL COUNSEL OF RECORD.**

EXHIBIT
G

18TH JUDICIAL DISTRICT COURT FOR THE PARISH OF IBERVILLE

STATE OF LOUISIANA

NO. 60,195                                              DIVISION "A"

TERRY GIAUQUE, MELISSA BERTRAND AND DARLA R. LARSON individually

and on behalf of the minor child ALLIE LARSON

VERSUS

CLEAN HARBORS PLAQUEMINE, L.L.C. and MICHAEL A. SULLIVAN

## JUDGMENT OF COURT

Having considered the Petition for Preliminary Injunction, the evidence submitted

by the parties at the hearing on the matter, and the law;

**IT IS ORDERED** that Clean Harbors Plaquemine, L.L.C. be and is hereby

restrained from disposing of hazardous waste in the injection well located at 32655

Gracie Lane, Plaquemine, Louisiana in violation of LSA-R.S. 30:2202(C)

Thus done and signed this 14th day of January, 2005 in New Roads, Louisiana.

Judge James J. Best, Division "A"
18th Judicial District Court

JAMES J. BEST
Judge, Division A
18th Judicial District
P.O. Box 536
New Roads, LA 70760

A TRUE COPY

DATE _____

Deputy Clerk, Ex-officio Recorder. Iberville Parish, Louisiana

FILED

2005 JAN 19 P 1:41

CLERK ∙ EX OFFICIAL
IBERVILLE ∙ LOUISIANA

**CLERK: PLEASE FORWARD NOTICE TO ALL COUNSEL OF RECORD.**

EXHIBIT

H

Blumberg No. 5238