UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **In re:**<br><br>**CLEAN HARBORS PLAQUEMINE, LLC,**<br><br>Debtor. | **Chapter 11**<br>**Case No. 07-10019** |

## MEMORANDUM IN SUPPORT OF MOTION FOR ORDER
## DISMISSING CASE OR, IN THE ALTERNATIVE, ABSTENTION

Terry Giauque ("Giauque"), Melissa Bertrand ("Bertrand"), Darla Larson ("Larson"), Walter Allen ("Allen"), Kim Fowler ("Fowler"), and Claude Duncan ("Duncan") (collectively "Movers"), hereby submit this Memorandum in support of their Motion for Order Dismissing Case or, in the Alternative, Abstention ("the Motion"). Movers respectfully suggest that the Motion should be considered in advance of Movers' companion Motion for Order Granting Relief From the Stay which would become moot if the Motion to Dismiss or Abstain is granted.

## I.  PRELIMINARY STATEMENT AND SUMMARY OF RELIEF SOUGHT

The Debtor, Clean Harbors Plaquemine, LLC ("CHP" or "Debtor"), is a defunct wholly owned subsidiary of Clean Harbors, Inc. ("CHI"), a publicly traded company with many similar "single asset" subsidiaries. CHP has no meaningful assets with which to reorganize, no employees, conducts no ongoing business, and has minimal debt beyond its guaranty of the debt of its parent company. This case was filed and remains in bankruptcy for one reason and one reason only- to frustrate and impede the implementation and enforcement of a state court order requiring the remediation of the Debtor's sole asset, a closed hazardous waste site located at

Bayou Sorrel, which site has been found to present an imminent and substantial endangerment to the health, safety and well-being of the citizens of Louisiana and its environment. It is patently obvious that the sole issue facing CHP (and its parent, CHI, as well as other defendants) is the remediation of its injection well site and the surrounding land and water in Iberville Parish, an issue that is within the jurisdiction of and is the subject of a mandatory injunction issued by, the Honorable James J. Best, Judge in and for the 18th Judicial District Court, Parish of Iberville, State of Louisiana. Permitting this case to continue essentially permits this debtor to flaunt a valid mandatory injunction issued by Judge Best ordering CHP to submit and implement a clean up plan. Under the circumstances, dismissal of this case or, alternatively, abstention in favor of the pending state court case(s) is mandated for cause because (1) the Debtor filed its petition in bad faith, (2) no legitimate purpose will be served by affording the Debtor protection from non-compliance with a state court injunction and, (3) the Debtor's affairs are manifestly incapable of reorganization. *In re Little Creek Development Company*, 779 F. 2d 1068 (5th Cir. 1986); cf. *In re Southern Healthcare Systems, Inc.,* 2003 WL 24027460 (Bankr. M.D. La 2003).

On October 17, 2006, on the eve of a contempt hearing scheduled the next morning before Judge Best, the Debtor, a self-described "insignificant subsidiary" of CHI, filed this Chapter 11 case in the United States Bankruptcy Court in Boston. Thereafter, Movers filed a similar motion to this (but which also included an alternative request for relief from the stay) in the Boston Bankruptcy Court which was heard by the Hon. Judge William C. Hillman on November 29, 2006. During the course of that hearing, Judge Hillman stated that he would not dismiss the case "for now" but instead he granted Movers partial relief from the stay. Subsequently, a dispute arose between counsel for Movers and counsel for CHP, CHI, and other

defendants as to the meaning of Judge Hillman's ruling with respect to stay relief. As a result, additional pleadings were filed by Movers and CHP seeking clarification and a hearing on that matter was held on December 12, 2006, during which Judge Hillman "invited" the parties to seek a change of venue to this District. Thereafter, Movers filed a Motion to Change Venue and agreed to a request by CHP's counsel that the stay be reinstated until such time as new or renewed motions for relief by Movers could be filed in and heard by this Court. Contemporaneously with the filing of this Motion to Dismiss or Abstain, Movers have filed a separate Motion for Relief from Stay to be heard if the Motion to Dismiss or Abstain is not granted.

## II. FACTUAL BACKGROUND

In August 2002, CHI purchased the assets of Safety-Kleen's Chemical Services Division pursuant to an order entered in the Safety-Kleen's Delaware Chapter 11 case. Included with those assets was Louisiana's sole commercial hazardous waste injection well located at 32655 Gracie Lane in Bayou Sorrel, Louisiana. CHP was organized as a wholly owned single asset subsidiary of CHI that acquired title to the Bayou Sorrel property.

Although Movers are plaintiffs (and counsel for Movers represent them and others) in multiple suits against CHP, CHI, and others[1] (collectively "the Louisiana Litigation") the most

---

[1] Although Movers do not believe a discussion of the details of each of the following pending matters is necessary for proper consideration of this Stay Motion, this Stay Motion is supported by the Plaintiffs in each of the following cases which, including *Giauque I*, comprise the "Louisiana Litigation:" (1) *Walter Allen v. Black Stallion, Inc., Clean Harbors Plaquemine, LLC, Clean Harbors, Inc. And Clean Harbors Environmental Services, Inc.*, docket number 64,200, Division "A" in the 18th Judicial District Court for Iberville Parish, Louisiana; (2) *United States of America, ex rel., Claude I. Duncan versus Safety-Kleen (Plaquemine), Inc., Clean Harbors (Plaquemine), L.L.C., Clean Harbors, Inc., Syngenta Crop Protection, Inc., Exxon Mobil Corporation, Lyondell Chemical Corporation, and Velsicol Chemical Corporation*, docket number 04-0436 in the United States District Court for the Middle District of Louisiana; (3) *Walter Allen and Kim Fowler v. Rollins Environmental Services, Inc., Michael A. Sullivan, John C. Arbuthnot Clean Harbors (Plaquemine), L.L.C., Clean Harbors, Inc. ("CHI"), Clean Harbors*

relevant pending case with respect to consideration of this Motion is styled *Terry Giauque, Melissa Bertrand, and Darla Larson, individually and on behalf of the minor child, Allie Larson versus Clean Harbors Plaquemine, LLC and Michael A. Sullivan*, docket number 60,195, Division "A" in the 18th Judicial District Court for Iberville Parish, Louisiana. ("*Giauque I*").

*Giauque I* was brought in the 18th Judicial District Court for the Parish of Iberville, Louisiana on November 7, 2003. Giauque, Bertrand, and Larson filed suit against CHP and individual defendant Michael A. Sullivan ("Sullivan"), a Louisiana citizen, for violations of Louisiana environmental law and regulations at the CHP injection well and neighboring polluted property in Bayou Sorrel, Louisiana, including a 1.5 mile stretch of sensitive and fragile wetlands where chemical waste was released from a hazardous waste pipeline. Counsel for Movers has expended hundreds of thousands of dollars on environmental sampling and analyses, experts, and related clean up reports in connection with the litigation.

The relief requested in the *Amended Petition* filed in *Giauque I* may be summarized as follows:

    a.    adoption of the court-ordered clean up plan for the removal of the pollution source to abate the imminent and substantial endangerment to human health and the environment presently existing in Bayou Sorrel, and quantification of the costs associated with the implementation of the clean up plan in order that those costs can be scheduled with this Court for payment;

    b.    the assessment of penalties against the Debtor for violating LSA-R.S. 30:2203 so those penalties may be quantified and scheduled with this Court for payment;

---

*Environmental Services, Inc. ("CHESI"), Cyril Hinds, Gerald I. Hebert, Steadfast Insurance Company*, Docket No.: 47,254, Division "A", 18th Judicial District Court, Parish of Iberville, State of Louisiana. Furthermore, the Plaintiffs in each of the aforesaid cases reserve the right to subsequently seek relief from the stay or any other relief to which they may be entitled.

c.     the adjudication of the remaining violations set forth in the Movers' *Amended Petition*, and the assessment of penalties for those violations. Thereafter, those penalties can be quantified and scheduled with this Court for payment; and,

d.     enforcement of injunctive relief necessary to protect the Movers and the environment so long as this does not require the Debtor to expend any sums of money.

Movers have asserted that CHP and other defendants have (1) illegally disposed of hazardous waste; (2) failed to report and take prompt remedial action in response to unauthorized discharges and releases of hazardous constituents to ground waters from 5 pits concealed in the swamps and fragile wetlands of Bayou Sorrel; and, (3) intentionally withheld of crucial data and information evidencing the existence and severity of chemical contamination of soils and ground water at the injection well facility and its surrounding environment, including along a pipeline right-of-way that is used by the Movers and others for recreational purposes.

In *Giauque I,* the following relevant orders have been entered:

(1)     a preliminary injunction prohibiting the disposal of hazardous waste into the Class I injection well because the trial court found it was located within the banks or boundaries of a body of surface water in violation of LSA-R.S. 30:2202(C)[2];

(2)     a Temporary Restraining Order ("TRO") enjoining defendants from violating LSA-R.S. 30:2203 by allowing unauthorized discharges, releases and migration of pollutants, hazardous waste, and constituents of concern from a certain location designated at the injection well facility as the "new Area of Concern" (hereinafter "AOC") into ground water and surface water;

(3)     a preliminary injunction further effectuating the TRO to prohibit the continuing migration of toxic chemicals in the soil and ground water;

(4)     an order requiring the submission of Clean Up Plans to remove the source of pollution causing the contamination of the soil and ground water;

(5)     a ruling finding that the defendants had violated Section 2203 by failing to take prompt remedial action and,

---

[2] This Preliminary Injunction was vacated on appeal.

(6)     an order requiring the defendants and non-parties to produce documents and other evidence previously wrongfully withheld on the basis of privilege and confidentiality

At the time of the filing the bankruptcy on October 17, 2006, the following motions were set for hearing:

(1)     Plaintiffs' Motion to Adopt Clean Up Plan;

(2)     Defendants' Motion for Status Conference on Clean Up Plans; and

(3)     Plaintiffs' Motion For Damages and Penalties for Violation of TRO

Under Louisiana law, an interested citizen may file a civil action in district court **on his own behalf** against any person whom he alleges to be in violation of environmental statutes or regulations, subject to certain limitations.  LSA-R.S. 30:2026.  *In the Matter of American Waste and Pollution Control Company*, 642 So.2d 1258,  93-3163 (La. 9/15/94). Emphasis added.

The only limitations on such suits is that, pursuant to LSA-R.S. 30:2026(B)(1), written notice be given to the LDEQ and the violators thirty (30) days prior to filing a citizen suit; and, that no citizen suit may be brought for the same violations alleged in the citizen suit if the violator, with regard to the same violations, is already subject to an enforcement order issued pursuant to the LEQA, or if the violator is a defendant in any civil suit brought under the provision of Section 2025 of the LEQA, or if the violator is already the subject of an action to assess and collect a civil penalty pursuant to Section 2025(E) of the LEQA.  LSA-R.S. 30:2026(B)(4).  The Movers gave the requisite 30-day notice to the LDEQ and the Debtor. Neither the LDEQ nor the Debtor responded, thus, allowing Movers to proceed with their civil action.

**No agency or individual other than the Movers are pursuing remedies for the violations enumerated in the *Giauque* suit**.  The record in the *Giauque I* matter is devoid of any evidence that Clean Harbors and/or Michael Sullivan were or are the subject of any enforcement order, civil suit, or civil penalty action by the LDEQ.  There has been no evidence or testimony offered by the LDEQ or LDNR that the Debtor is the subject of any enforcement orders or civil actions described in Section 2026(B)(4).  This issue was extensively briefed and irrefutable evidence was presented in the Louisiana courts by the Movers where it was held that the Movers had satisfied all of the prerequisites of Section 2026 and could proceed with their claims and remedies.

The Louisiana citizen suit statute provides the Movers with a private right and cause of action against the Debtor for adversely affecting Movers' private interests.  The Louisiana citizen suit statute, LSA-R.S. 30:2026, reads in pertinent part:

> A. (1) Except as provided in Subsection B of this Section, **any person having an interest, which is or may be adversely affected, may commence a civil action on <u>his</u> <u>own</u> <u>behalf</u> against any person whom he alleges to be in violation of this Subtitle or of the regulations promulgated hereunder**.  The action must be brought either in the district court in the parish in which the violation or alleged violation occurs or in the district court of the domicile of the alleged violator, and shall be afforded preferential hearing by the court.

*Id.*  Emphasis added.

In the *Giauque I* proceeding, the Debtor filed several dilatory and declinatory exceptions with the Louisiana trial court, including the exceptions of no cause of action and no right of action.  The primary defense strongly argued by the Debtor on these specific exceptions was that the Louisiana Department of Environmental Quality ("the LDEQ") was allegedly already taking action against the Debtor through the RCRA Facility Investigation ("the RFI") process with

regard to the violations claimed by the Movers.[3]  Finding that the LDEQ was not taking any such action against the Debtor, the trial court denied all of the exceptions raised by the Debtor and its co-defendant.  Supervisory writ applications were sought by the defendants to the Louisiana First Circuit Court of Appeal and the Louisiana Supreme Court.  In both instances, those writ applications were denied.

The Debtor also unsuccessfully argued that the LDEQ had jurisdiction over the Plaintiffs' claims rather than the trial court.  Again, the trial court overruled this exception, and the Louisiana First Circuit Court of Appeal and the Louisiana Supreme court each denied the Debtor's writ applications.  Significantly, in a later appeal by the Debtor of the issuance of a preliminary injunction, the Debtor again raised the issue of the trial court's jurisdiction to hear the Movers' claims.   The Louisiana First Circuit Court of Appeal in its June 9, 2006 Judgment in *Giauque, et al. v. Clean Harbors Plaquemine, LLC*, 2005-0799, determined there was no merit to the Debtor's argument that the trial court lacked jurisdiction.[4] The First Circuit held:

> "Based upon our review of this matter, we are of the opinion that appellate review of an interlocutory judgment overruling various exceptions raised by defendants is improper at this time. ***Additionally***, it is evident to this court that plaintiffs in this matter have filed a citizen suit pursuant to the LEQA and the specific statutory authority of La. R.S. 30:2026. Plaintiffs are not appealing a final determination of state agency, but are instead attempting to enforce Louisiana's environmental laws **and seek redress for alleged violations of said laws**. For the foregoing reasons, **we conclude that defendants' first assignment of error *alleging jurisdictional defects with respect to plaintiffs' lawsuit is without merit***."

Emphasis added.

_____

[3]This is the _identical_ argument put forth by the Debtor before the Massachusetts Bankruptcy Court at the November 29, 2006 hearing.  .

[4]The Debtor filed a writ application to the Louisiana Supreme Court regarding this decision which was denied.

The Louisiana Supreme Court has held that remedies available under Section 2026 to individual petitioners include damages, civil penalties, injunctive relief, costs and attorney fees. *In the Matter of American Waste and Pollution Control Company*, 642 So.2d 1258, 93-3163 (La. 9/15/94).

As mentioned above, Judge Best granted injunctive relief to the Movers, including ordering the immediate clean up of the source of the pollution emanating into Louisiana swamps and wetlands from the Clean Harbors pits. The court ordered the parties to submit Clean Up Plans for its review and determination of an appropriate course of action. A hearing was scheduled to take place on October 23, 2006 on Movers' motion to adopt their clean up plan,[5] however, the Debtor filed its bankruptcy petition on October 17, 2006 and the automatic stay was imposed. Additionally, a hearing was rescheduled for October 23, 2006 on Movers' motion to impose penalties against Clean Harbors for its violation of Section 2203.

Movers now wish to proceed with these hearings to allow the trial court to enter such orders as may be necessary to stop the ongoing pollution and to select and order the implementation of a clean up plan necessary to safeguard the public health, safety, and welfare. Movers also seek relief to permit the trial court to select, but not order the implementation of, a long term clean up plan and quantify the costs of the pollution source removal.

The Debtor may argue that it has no means by which to pay for the corrective actions needed at the injection well facility. However, pursuant to Louisiana's environmental

---

[5]The hearings were originally scheduled to take place on August 18, 2006, however, the Movers postponed them to engage in what they were led to believe was going to be good-faith mediation of the matter.

regulations, the owner or operator of a hazardous waste treatment, storage, or disposal facility must demonstrate financial responsibility for environmental impairment caused by or related to the facility. In that regard, the Debtor, through CHI as its ultimate parent corporation, has provided the attached Environmental Impairment Liability Insurance Policy to the LDEQ. The liability limit of this Steadfast Insurance Company insurance policy is thirty million ($30,000,000.00) dollars.

In addition, and attendant to, the illegal disposal of hazardous waste, the core issues in *Giauque I* are:

    a.     the knowing and intentional misrepresentations made by the defendants in official documents submitted to the agencies; and

    b.     the knowing and intentional withholding of facts and data by the defendants with regard to the existence, breadth and severity of chemical contamination in soil, ground water, and biota in the community of Bayou Sorrel, Louisiana.

On May 4, 2004, the trial court issued a Temporary Restraining Order ("TRO") enjoining the defendants from violating LSA-R.S. 30:2203 by allowing unauthorized discharges, releases and migration of pollutants, hazardous waste, and constituents of concern from a certain location designated at the injection well facility as the "new Area of Concern" (hereinafter "AOC") into ground water and surface water.

On May 18 and 19, 2006, there was a 2-day hearing before the trial court on violations of the court's TRO by the Debtor. The Movers provided factual and scientific evidence, as well as the expert testimony, that conclusively proved violations of the TRO occurred since its entry by the court on May 3, 2004. On June 9, 2006, the trial court issued its *Ruling* and found that:

    a.     the AOC presents an imminent and substantial endangerment to health and the environment;

b.       there has been migration from the AOC and there is significant risk of additional migration;

c.       chemical contamination of the soil and groundwater in and around the AOC is widespread and substantial;

d.       chemical contamination is located in an area accessible to humans and wildlife;

e.       all of the above poses a serious threat to life and property

Exhibit A, *Ruling,* June 9, 2006, p.1, ¶¶2, 3.

The court also made the following crucial finding:

"This Court finds that the May 4, 2004 Temporary Restraining Order was stipulated to by the Parties, and it has remained in full force and effect by agreement of the Parties.  **The Court also finds that the Defendants are in total disregard for that Restraining Order as though the Order had never existed**."

Exhibit A, p.1, last paragraph.  Emphasis added.

Finally, the court also found that the Debtor had violated LSA-R.S. 30:2203 by failing to take prompt remedial action.    Exhibit A, p.2, first paragraph.   The court also granted a preliminary injunction against the Debtor and ordered that Clean Up plans be submitted by the parties by July 10, 2006 for the court's review and determination of the appropriate course of action. Exhibit A, p.2.

In reinforcing its findings and denying Clean Harbors' subsequent request for a stay of its June 9 *Ruling*, the court stated the following in its *Reasons for Denial of Suspensive Appeal*:

"After a two-day hearing, this Court found that the temporary restraining order by which Clean Harbors had knowingly and voluntarily agreed to, pending the hearing on the preliminary injunction, **was grossly violated** and granted the preliminary injunction.   **The injunction further effectuating the temporary restraining order is to prohibit the continuing migration of toxic materials in the soil and ground water**."

Emphasis added.

The parties submitted Clean Up Plans to the court on July 10, 2006. The Movers motioned the court to adopt their Clean Up Plan. The Movers also filed a motion to assess penalties against Clean Harbors for its violations of the trial court's TRO. A hearing was scheduled on these motions for August 18, 2006, but that hearing date was continued twice as the parties engaged in unsuccessful mediation efforts. Clean Harbors filed its bankruptcy petition just six (6) days before the rescheduled hearing.

Entirely through their own efforts, Movers have identified no less than five separate financially solvent entities that are responsible for the chemicals and waste buried in the five pits at issue in this suit, as well as other contamination along CHP's hazardous waste pipeline. The identities of these responsible parties were long ago provided to CHP who, as a matter of law, can force these entities to pay clean up costs. Among the responsible parties identified are ExxonMobil Corporation, Waste Management, Inc., Lyondell Chemical Corporation and Syngenta Crop Protection, Inc. CHP has advised Movers that it would <u>not</u> seek financial contribution from these responsible parties; many if not all of these entities are believed to be *major customers of CHI* and its other subsidiaries in the hazardous waste disposal business. Thus, CHP has ignored potential sources of recovery solely to avoid damaging the business interests of its parent or affiliates. Finally, it appears that there is more than adequate insurance coverage in place to fund a Clean Up Plan in order for CHP to comply with the injunction issued by Judge Best.

As mentioned above, CHP filed this Chapter 11 case on October 17, 2006, just after receiving certain adverse rulings from the Louisiana Supreme Court, on the eve of a State court contempt hearing and just a few days prior to a scheduled hearing on a preliminary injunction.

By ordering a change of venue and suspending or revoking his prior order granting partial stay relief to Movers, the Boston Bankruptcy Judge evinced a desire that this Court, situated in Louisiana as the site of the contaminated waste site and applying Louisiana law, independently consider and determine whether this case should be permitted to continue in Chapter 11 under the circumstances.

## III.   LAW AND ARGUMENT

In this Circuit, a finding of good faith (or at least a lack of bad faith) is required in order for a debtor to seek relief in Chapter 11. *In re Little Creek Development Company* ("*Little Creek*"), supra. Numerous other courts have agreed that good faith is a requisite to maintaining a case under Chapter 11; see, e.g., *Connell v. Coastal Cable T.V., Inc.* (In re Coastal Cable T.V., Inc.), 709 F.2d 762, 764 (1st Cir.1983*)*; *In re Southern Healthcare Systems, Inc*., supra (Bankr. M.D. La.2003): *In re Thirtieth Place*, 30 B.R. 503 at 505-06; *In re American Property Corp*., 44 B.R. 180 at 183 (Bankr. M.D.Fla.1984); *In re Corp. Deja Vu*, 34 B.R. 845 at 848-50; *Duggan v. Highland-First Ave. Corp*., 25 B.R. 955 at 961-62 (Bankr.C.D.Cal.1982); *In re Zed, Inc.,* 20 B.R. 462 at 463-64 (Bankr.N.D.Cal.1982); *In re FJD, Inc.*, 24 B.R. 138 at 140-41 (Bankr.D.Nev.1982); *Matter of 299 Jack-Hemp Associates*, 20 B.R. 412 at 413; *In re Alison Corp.*, 9 B.R. 827 at 829-30 (Bankr.S.D.Cal.1981); *In re Victory Constr.*, 9 B.R. 549 at 565, 568; In re *Lotus Investments, Inc.*, 16 B.R. 592 at 594-95; *In re Eden Assoc*., 13 B.R. 578 at 584-85 (Bankr.S.D.N.Y.1981); *In re Dutch Flat Inv. Co*., 6 B.R. 470 at 471-72 (Bankr.N.D.Cal.1980); *In re 2218 Bluebird Ltd. Partnership*, 41 B.R. 540 at 542-44 (Bankr.S.D.Cal.1984).

According to the Fifth Circuit Court of Appeal:

> Every bankruptcy statute since 1898 has incorporated literally, or by judicial interpretation, a standard of good faith for the commencement,

prosecution, and confirmation of bankruptcy proceedings. See *In re Victory Constr. Co.*, 9 B.R. 549, 551-60 (Bankr.C.D.Cal.1981) (containing an excellent historical survey). See, e.g., *Fidelity Assur. Assoc. v. Sims,* 318 U.S. 608, 621, 63 S.Ct. 807, 813-14, 87 L.Ed. 1032 (1943); *A-COS Leasing Corp. v. Wheless*, 422 F.2d 522, 523-25 & n. 1 (5th Cir.1970). Such a standard furthers the balancing process between the interests of debtors and creditors which characterizes so many provisions of the bankruptcy laws and is necessary to legitimize the delay and costs imposed upon parties to a bankruptcy. Requirement of good faith prevents abuse of the bankruptcy process by debtors whose overriding motive is to delay creditors without benefitting them in any way or to achieve reprehensible purposes. Moreover, a good faith standard protects the jurisdictional integrity of the bankruptcy courts by rendering their powerful equitable weapons (i.e., avoidance of liens, discharge of debts, marshalling and turnover of assets) available only to those debtors and creditors with "clean hands." The Supreme Court aptly summarized the bankruptcy court's responsibility to enforce a standard of good faith when it stated:  "A court of equity may in its discretion in the exercise of the jurisdiction committed to it grant or deny relief upon performance of a condition which will safeguard the public interest…. These principles are a part of the control which the court has over the whole process of formulation and approval of plans of composition or reorganization." *American United Mut. Life Ins. Co. v. City of Avon Park,* 311 U.S. 138, 145, 61 S.Ct. 157, 161-62, 85 L.Ed. 91 (1940) (quoting *SEC v. United States Realty & Improvement Co.*, 310 U.S. 434, 455, 60 S.Ct. 1044, 1053, 84 L.Ed. 1293 (1940)).  *Little Creek* at 1071-72.

*Little Creek* addressed the bad faith argument in relation to a motion for relief from the automatic stay.  The factors set forth in *Little Creek* generally describe a debtor that cannot propose a confirmable plan and is merely seeking to delay the inevitable loss of its property, just as the Debtor is doing in this case.  After discussing such factors, the Court stated the following:

Resort to the protection of the bankruptcy laws is not proper under these circumstances because there is no going concern to preserve, there are no employees to protect, and there is no hope of rehabilitation, except according to the debtor's "terminal euphoria." The Sixth Circuit in *Winshall Settlor's Trust*, 758 F.2d at 1137, aptly noted that [t]he purpose of Chapter 11 reorganization is to assist financially distressed business enterprises by providing them with breathing space in which to return to a viable state. See *In re Dolton Lodge Trust No. 35188*, 22 B.R. 918, 922 (Bankr.N.D.Ill.1982). "[I]f there is not a potentially viable business in place worthy of protection and rehabilitation, the Chapter 11 effort has lost its raison d'etre...." *In re Ironsides, Inc.*, 34 B.R. 337, 339 (Bankr.W.D.Ky.1983). Neither the bankruptcy courts nor the creditors should be

subjected to the costs and delays of a bankruptcy proceeding under such conditions. *Little Creek* at 1073.

The threshold question is what are those "valid bankruptcy purposes" against which the conduct of these Debtors should be evaluated?  The Third Circuit's recent decision in *Integrated Telecom Express. Inc.*, 384 F.3d 108, 120 (3d Cir. 2004)*,* is particularly instructive on this point. The Third Circuit explained: "The Supreme Court has identified two of the basic purposes of Chapter 11 as (1) 'preserving going concerns' and (2) 'maximizing property available to satisfy creditors.'" *Integrated Telecom*, 384 F.3d at 119 (quoting *Bank of Am. Nat'l Trust & Sav. Ass'n v. N. LaSalle St. P'ship*, 526 U.S. 434,453 (1999)). The court then explained that these purposes are reflected in the reorganization provisions of the Bankruptcy Code and the cases applying them through the common theme of "avoidance of the consequences of economic dismemberment and liquidation, and the preservation of ongoing values in a manner which does equity and is fair to the rights and interests of the parties affected." *Integrated Telecom,* 384 F.3d at 119 (quoting *SGL Carbon, 200* F.3d at 161).

In this case, there is no ongoing business to protect (and thus no "going concern" to preserve) and no property to preserve for liquidation and distribution since the only property of CHP is the waste site, in reality a liability rather than an asset since there can be no doubt that clean up costs will far exceed its value.  All business operations at the facility ceased on or immediately prior to the filing of this case and all that remains of the Debtor at this time is merely the detritus of that course of action.  The sole asset of CHP is, in truth, a liability that must be cleaned up under Louisiana state law and in compliance with Judge Best's injunction rather than an asset that can be liquidated to satisfy any claims of creditors.

As explained by the Third Circuit, "[t]o say that liquidation under Chapter 11 maximizes the value of an entity is to say that there is some value that otherwise would be lost outside of bankruptcy." *Integrated Telecom,* 384 F.3d at 120. Here, there is no reasonable prospect of making more value available to creditors than would be the case outside of bankruptcy since this Debtor really has no assets of any significance. In short, there really is no value available for distribution by CHP either in or out of bankruptcy. Indeed, the only means by which this Debtor has been able to retain and pay counsel in connection with this case has been for that counsel to be paid by its parent, CHI. Continuance of this case in Chapter 11 will only serve to increase the administrative costs and frustrate legitimate creditor interests.

This Debtor fits the profile in all material respects of bad actors in other cases whose chapter 11 petitions have been rejected as having been filed in bad faith. It has no operations, employees, offices, or other indicia of a going concern. It has no source of income. Excepting the cash funded by CHI for its own purposes in anticipation of, and subsequent to, the Debtor's bankruptcy filing for the purpose of retaining counsel, the Debtor has no meaningful assets that could serve as the basis for any reorganization or rehabilitation. Indeed, the continued accrual of hundreds of thousands of dollars in legal expenses in connection with this case is in and of itself causing a substantial and continued loss to the estate that cannot be recovered since this debtor has no income and, even if the value of its assets as scheduled by the Debtor are taken as true, cannot be repaid by any potential sale of those assets. In short, the Debtor has nothing of appreciable value to offer its creditors, and its creditors cannot hope to obtain any cognizable benefit from the commencement or continuation of this Chapter 11 case.

It is also well established that filing a Chapter 11 petition merely to obtain a tactical

litigation advantage is an independent basis for finding bad faith and dismissing the case. See *Integrated Telecom,* 384 F.3d at 120 and *SGL Carbon*, 200 F.3d at 165 ("[B]ecause filing a Chapter 11 petition merely to obtain tactical litigation advantages is not within 'the legitimate scope of the bankruptcy laws,' courts have typically dismissed Chapter 11 petitions under these circumstances as well.") (quoting *Marsch v. Marsch (In re Marsch),* 36 F.3d 825, 828 (9th Cir. 1994)); *In re Toth*, 269 B.R. 587, 590 (Bankr. W.D. Pa. 2001) ("Several courts have held that the filing of a bankruptcy petition as a litigation tactic. . . is an indication of a bad faith filing."); *In re Ravick Corp.,* 106 B.R. 834, 844 (Bankr. D.N.J. 1989) (stating "[g]enerally, where. . .the filing for relief under the Bankruptcy Code is intended to frustrate the legitimate efforts of creditors to enforce their rights against the debtor, dismissal for 'cause' is warranted."). As one court noted in a Chapter 11 case driven by underlying state law issues:

> These Chapter 11 cases do not represent efforts pitched to a "business reorganization" or to "restructure a business's finances", They are essentially a two-party civil lawsuit involving non-bankruptcy law brought in the bankruptcy court in the guise of being a reorganization of some sort under Chapter 11. Chapter 11 was never intended to be used as a fist in a two party bout. The Chapter is entitled reorganization and not litigation. *In re RBA East, Inc*., 87 B.R. 248, 260 (Bankr. E.D.N.Y. 1988).

As such, this bad faith filing by CHP should be summarily dismissed pursuant to Section 1112 of the Bankruptcy Code.

Alternatively, this Court should suspend proceedings in, or dismiss, this case in favor of the pending *Giauque I* State Court case pursuant to Section 305(a)(1) of the Bankruptcy Code That Section states: "The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceeding in a case under this title, at any time if --- (1) the interests of creditors and the debtor would be better served by such dismissal or suspension." Under the

present circumstances, there is little doubt that the interests of the Debtor and the Debtor's creditors would be better served without the cost and delay attendant to this Chapter 11 case.

The court in the case of *In re Mazzocone*, 200 B.R. 568 (E.D. Pa. 1996) acknowledged that the application of § 305(a) is an extraordinary remedy, but found that its use is appropriate when the interests of the creditors and the debtor are best served by dismissal or suspension, citing *In re Runaway II, Inc.*, 168 B.R. 193, 198 (Bankr.W.D.Mo.1994); *In re Realty Trust Corp.*, 143 B.R. 920, 926 (D.N. Mariana Islands 1992); *Business Info. Co.*, 81 B.R. at 387.

In applying Section 305(a), courts have considered a wide range of factors, including, but not limited to, who filed the bankruptcy petition, the availability of another forum to resolve the pending disputes, the necessity of federal proceedings to achieve a just and equitable solution, the expense of the federal proceedings in comparison with proceedings in another forum, the purpose of the party seeking to remain in bankruptcy court, the economy and efficiency of having the bankruptcy court handle the matter and the possible prejudice to the various parties. See, e.g., *In re 801 South Wells Street Ltd. Partnership*, 192 B.R. 718, 723 (Bankr.N.D.Ill.1996); *Realty Trust Corp.*, 143 B.R. at 925-26; *In re Fax Station, Inc.*, 118 B.R. 176, 177 (Bankr.D.R.I.1990).

The court's abstention power should be exercised if the bankruptcy case was filed to resolve what is essentially a two party dispute. *In re Argus Group, 1700. Inc.*, 206 B.R. 737, 755 (Bankr. E.D. Pa. 1996). As this Court stated in *In re Southern Healthcare Systems, Inc*., supra:

> Courts have cited lack of good faith in dismissing cases where it was found that the case was filed purely as a litigation tactic ( *In re First Financial Enterprises, Inc.,* 99 B.R. 751 (Bankr.W.D.Tex.1989)), to resolve what is really a two-party dispute ( *In re SB Properties, Inc.,* 185 B.R. 206 (Bankr.E.D.Pa.1981)), or as a forum-shopping device. *In re Monsour Medical Center, Inc.,* 154 B.R. 201 (Bankr.W.D.Pa.1993)).

As shown in the narrative description of the events leading to the filing of this case, the Debtor and the Movers herein have been locked in state court litigation for several years over flagrant violations of Louisiana environmental law, regulations, and state court orders. A Louisiana federal court has already remanded *Giauque I* back to the Louisiana state court. This Chapter 11 filing is nothing more than an overt attempt by the Debtor to have this Court revisit issues, decisions, and orders already decided and reviewed by Judge Best and other non-bankruptcy courts. The arguments that will be made in this Court by the Debtor have already been heard and decided by the 18th Judicial District Court and the Louisiana appellate and supreme courts.

In *Argus*, supra, the court used its discretionary power to dismiss litigation which a debtor removed to the bankruptcy court after it had been set to go to trial on multiple counts of state law securities violations, fraudulent misrepresentation and other allegations of improper conduct by defendants, including the debtor.

> The basis for mandatory abstention is set forth in § 1334(c)(2), which states, in relevant part: Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction. 28 U.S.C. § 1334(c)(2).

> As held in *Federal National Mortgage Association v. Rockafellow* (*In re Taylor*), 115 B.R. 498 (E.D.Pa.1990) (adopting report and recommendations of bankruptcy court), mandatory abstention pursuant to the aforementioned provision is appropriate only when the following six requirements are met:

> (1) a timely motion is made;
> (2) the proceeding is based upon a state law claim or state law cause of action;
> (3) the proceeding is a related case under Title 11;
> (4) the proceeding does not arise under Title 11;

(5) the action could not have been commenced in a federal court absent jurisdiction under 28 U.S.C. § 1334; and

(6) an action is commenced, and can be timely adjudicated, in a state forum of appropriate jurisdiction. *Argus*, supra, at pp. 747-748.

The *Argus* court found that factor number five was not met, but that it should exercise discretionary abstention saying:

Section 1334 (c)(1) states:

Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11. 28 U.S.C. § 1334(c)(1).

In determining whether to exercise discretionary abstention under this section, courts focus upon a variety of factors. Some courts apply the following list of factors: (1) the effect or lack thereof on efficient administration of the estate; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of applicable state law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than the form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden of the bankruptcy court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; and (11) the presence of nondebtor parties. *Argus*, supra, at p. 751

The *Argus* court found that the adversary proceeding in question should be dismissed pursuant to § 1334 (c)(1) and that the Chapter 11 bankruptcy case should be dismissed pursuant to § 1112 (b) and/or § 305 (a) "as there was no reorganization purpose to be served by it." *Argus* at p. 756.

Here, all of the applicable factors point toward voluntary abstention from hearing this Chapter 11 case. First and foremost, there is no need for this case because there is no going

concern value to protect or meaningful assets to maximize or preserve. Simply put, this estate will not benefit from the exercise of bankruptcy jurisdiction. Second, the purpose of the filing was clearly to avoid the Louisiana state court action, even though the Middle District Court had already ruled that the disputes belonged in State court. Third, the bankruptcy case adds another layer of expense and delay to what simply boils down to litigation of state law issues between the Debtor and a small group of citizens statutorily enforcing Louisiana's environmental regulations at this hazardous waste site pursuant to Louisiana state laws. Fourth, there is nothing in this litigation that requires bankruptcy court expertise. To the contrary, the litigation solely involves Louisiana state environmental law. It is respectfully submitted that it would be an abuse and a misdirection of the bankruptcy courts resources to attempt to resolve this matter. The issues involved in this case have been actively litigated in Louisiana courts for years and the Louisiana courts are thoroughly competent and willing to timely resolve them. This debtor and others are already subject to (and alleged to be actively violating) restraining orders and injunctions issued by those courts and those courts are the proper forums to resolve those issues.

In *In re Southern Healthcare Systems, Inc. ("SHS"),* supra, this Court refused to dismiss, or abstain from hearing, a Chapter 11 case where it found that the case was filed primarily in response to an adverse state court judgment. However, this Court did recognize that dismissal and/or abstention may be warranted under different circumstances. Movers submit that this case provides exactly the different circumstances that warrant dismissal or abstention. Unlike the debtor in *SHS,* this Debtor has no substantial assets, no business operations, no employees, and no hope of reorganizing; unlike the debtor in *SHS* that operated several nursing homes and cared for hundreds of patients, this Debtor is, at best, a "single asset" debtor. In brief, all of the factors

that this Court discussed in its *SHS* decision that militated <u>against</u> dismissal or abstention of that case militate <u>for</u> dismissal or abstention in this case.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Movers respectfully urge this Honorable Court to dismiss this case or, alternatively, suspend proceedings herein and abstain in favor of the Louisiana state court.  Continuation of this case in bankruptcy court conflicts with fundamental principles of the Bankruptcy Code and serves no legitimate purpose.

Respectfully Submitted,

**STEFFES, VINGIELLO, & MCKENZIE, LLC**
13702 Coursey Boulevard, Building 3
Baton Rouge, LA 70817
Telephone: (225) 751-1751
Telecopier: (225) 751-1998


By: <u>/s/ William E. Steffes</u>
William E. Steffes (La.#12426)
Patrick S. Garrity (La. #23744)